FISHER and another vs. OTIS and others.

1. MORTGAGE — ASSIGNMENT. — A mortgage given to secure the payment of a note may be extinguished by the payment of the note, or passed to another by its transfer or indorsement, and if the note be a negotiable one and transferred to a *bona fide* purchaser, he will take it and the mortgage interest in the land which attends it, free from all equities existing between the original parties thereto. See *post, Martineau v. McCollum; Crosby v. Roub,* 16 Wis., 616; *Carpenter v. Longon,* 16 Wall., 271; *Kennicott v. The Supervisors,* id., 452.

2. SAME. — An assignment which purports to transfer, assign, set over and convey to the assignee, all the mortgagee's right, title, interest and estate in the mortgaged premises and the *debt* and *note,* secured by the mortgage with the rights, etc., accruing therefrom, *subject, however, to all the rights of O., the mortgagor in and to the same* will render the note and mortgage in the hands of such assignee, subject to all equities between the original parties, whether he purchased for value or had notice of them or not.

3. ANSWER. — Where a bill calls for an answer upon oath, the answer, so far as it is responsive to the matters contained in the bill, will prevail, unless overcome by the testimony of two witnesses, or by one and strong corroborative circumstances.

4. PENALTY — USURY. — Where a note was payable one year after date, without interest, but stipulated for interest after due at a higher rate than that allowed by law: *Held,* that such rate of interest must be regarded as a penalty for nonpayment, and the note was not thereby rendered usurious.

5. EVIDENCE — BURDEN OF PROOF. — Where it is shown that a mortgage given for a gross sum was in reality given only as a security for ad-

vances to be thereafter made; in an action to foreclose the mortgage, the burden of proof is on the complainant to show the amount of such advances.

6. CONTRACT—INTEREST.—A note and mortgage drawing twelve per cent. interest executed in a state where such rate of interest is allowed by law, is valid in the state where it was executed, although made payable in a state in which such a rate of interest would render it usurious.

7. SAME.—The *lex loci contractus* controls upon all questions as to the validity of a contract, and a contract valid by the laws of a state or country where it was made, is valid everywhere, unless it be shown that the parties intended to contract with reference to and be governed by the law of some state or country where it is to be performed, and by which the contract would be invalid.

APPEAL from the Circuit Court for *Racine* County.

The case was that *Fisher* and *Robinson* filed their bill in equity against *Otis* and others to foreclose a mortgage executed by *Otis* and wife to James S. Wiggin, securing the payment of a promissory note, given by *Otis* to Wiggin, for $15,000, payable one year after date, with interest after due at the rate of twelve per cent., payable semi-annually at the city of Boston, Mass. Wiggin assigned the note and mortgage to the complainants before the note became due, but the assignment of the note and mortgage was made expressly "subject, however, to all the rights of the said *Otis* and his wife in and to the same." It was agreed that *Otis* had paid on the note and mortgage $11,200, and the complainants claimed a decree for the balance, computing interest as specified in the note.

The defendant *Otis* in his answer, which was a sworn one, denied that at the time of the execution of the note he owed Wiggin $15,000, and alleged that the note and mortgage were given to secure a balance of account and future advances, and insisted that the note was usurious by the laws of Massachusetts where it was to be paid, there the highest lawful rate of interest being six per cent.

The complainants claimed to be *bona fide* purchasers of the note and mortgage, without notice of any defect in or defense

against them, and a question was also made, whether there was
sufficient testimony to overcome the allegations of the answer
of *Otis*, stating that the note and mortgage were given mainly
for future advances and his account as to the amount due
thereon; also whether the burden of proof was on the mort-
gagor or mortgagee in case of a mortgage for future advances,
to show the amount of such advances.

The court found from the answer of *Otis* and other proofs,
that he was indebted to Wiggin for the difference in the amount
of an invoice of goods at Detroit and at Boston, $811.55, that
Wiggin advanced to him at Southport, Wisconsin, where the
note and mortgage were executed, $9,000, and also subsequent-
ly the further sum of $2,162.73 on a letter of credit, and amount-
ing in all to $11,974.28.

Upon this basis the circuit court made its decree, allowing
interest on the advances at seven per cent. from the time when
they were respectively made, which, after deducting the ad-
mitted payment, left due the complainants $135.77, for which
sum and costs a decree of foreclosure was entered, and the
complainants appealed.

*Bond, Lovell & Evans*, for appellants:

1. The complainants having purchased the note before it be-
came due, they are not affected by any equities existing between
the original parties. The rule at law on this point is well set-
tled. Chitty on Bills, 90; *Baker v. Arnold*, 3 Caines, 279;
*Raymond v. Hess*, 13 Johns., 52; *Cone v. Baldwin*, 12 Pick.,
545; *Thurston v. McCoun*, 6 Mass., 428. It is also a settled
maxim that *equity follows the law* and enforces the same rules
in regard to negotiable paper. Story Eq., §§ 64, 64 c; *Phil-
ips v. Thompson*, 2 Johns. Ch., 418; *Murray v. Lylburn*, 2 id.,
443; *James v. Morey*, 2 Cow., 247; *Bay v. Coddington*, 5 Johns.
Ch., 54; *S. C.*, 20 Johns., 636; *McNiel v. Beard*, 6 Munf., 316; *Lo-
max v. Picot*, 2 Rand., 217, 247; *Hunt v. Sandford*, 6 Yerg.,
387; 3 Leigh, 597; *Riddle v. Mandeville*, 5 Cranch, 322. As
a general rule the assignee of a chose in action takes it

Fisher and another vs. Otis and others.

subject to all equities between the original parties. But negotiable paper constitutes an exception. Powell on Mort., Rand's ed., 908, 908 a, and note. Between persons equally innocent he that has the legal estate or interest will hold. 13 Wend., 573; Story's Eq., § 66 c. A mortgage is a mere incident to the debt, is controlled by the debt, and an assignment of the debt carries with it all the rights of the mortgagee, even though the assignee did not know of the existence of the mortgage. Powell on Mort., 142, 671, 1115; *Southern v. Mendun*, 5 N. H., 420; *Ellison v. Daniels*, 11 id., 274, 9 id., 69; *Green v. Hart*, 1 Johns., 580; *Jackson v. Blodgett*, 5 Cow., 202; 4 B. Mon., 417. The interest of the mortgagee in the land is a mere chattel security for the debt, and inseparable from it, and cannot be transferred, except in connection with the debt. 6 Johns., 290; 11 id., 534; 15 id., 319; 5 N. H., 430; 4 Rawle, 255. The rule in chancery as to setoffs is the same as at law. Rev. Stat., 414, 505; Law of Setoff, 189.

2. The answer set up by respondent in no wise is sustained by the evidence. The evidence of O'Connor and Willis is inadmissible under the stipulation. But if admitted, it does not support the case set up by respondent *Otis*. Evidence of negotiations prior to the conclusion of a contract is not proof of the contract or agreement itself. Chitty on Cont., 108; *Taylor v. Riggs*, 1 Peters, 591. The testimony of Wiggin is conclusive in favor of complainants.

3. The contract is not usurious. Interest did not accrue until after the note became due. The maker consequently could have avoided usury by paying the note when it became due. Ord. on Usury, 48. The note having been executed in Wisconsin and secured by mortgage on lands in Wisconsin, the parties might legally stipulate for the highest rates of interest allowed by the laws where the contract was made. *Chapman v. Robertson*, 6 Paige, 627; *Depau v. Humphreys*, 20 Martin, 1; Story on Conf. Laws, secs. 291 to 307.; 2 Kent, 460 and note, et seq.; *Sherman v. Gassett*, 11 Law Rep., 304; *Van Schaick v.*

*Edwards*, 2 Johns. cases.　It is a general rule that negotiable paper of every kind is construed and governed as to the obligation of the drawer or maker, by the law of the country where it was drawn or made.　2. Kent's Com., 460 and note, and authorities there cited.　The law of Massachusetts does not make the contract *void*, but only inflicts a penalty, and penal laws are local.　Story Conf. Laws, sec. 619 et seq.; and the courts of one state will not enforce the penal laws of another.　*Gale v. Easton*, 7 Met., 14; 11 Law Rep., 313.

*Pettit & Stoddard*, for appellee :

1. The note and mortgage are usurious.　The place of the performance of this contract, by the express terms of it, is Boston — and its validity, nature, obligation and interpretation, is to be governed by the laws of Massachusetts.　The negotiations for the loan to *Otis* were commenced in Boston, where Wiggin resided, he, knowing that *Otis* could not raise the money he needed, unless he submitted to the extortion of $1,800, proceeded with *Otis* to Southport — advanced $9,000 there — took this note of $15,000 payable to Wiggin's order, with interest after due " at the rate of twelve per cent. per annum, payable semi-annually, *at the city of Boston, Massachusetts.*" This obligation must be tested by the laws of the country, where the same is made payable, though actually executed and delivered in Wisconsin.　*Fanning v. Consequa*, 17 Johns., 511 ; *McCandlish v. Cruger*, 2 Bay (S. C.), 377 ; Story, Conflict of Laws, 233 and 280 ; *Sherrill v. Hopkins*, 1 Cow., 103–8 ; *Andrews v. Herriot*, 4 Cow., 510 and note ; *Andrews v. Pond*, 13 Peters, 65 ; 2 Kent., 459 to 461 ; *Gen'l Ins. Co. v. Belt*, No. 6 Western Law Journal, 261 ; *Kentucky v. Bassford*, 6 Hill, 526 ; *Thompson v. Ketchum*, 4 Johns., 285 and note, 288 ; *Smith v. Smith*, 2 Johns., 235, 240 ; 2 Burr, 1078 ; *Van Schaick v. Edwards*, 2 Johns. cases, 355 ; *Schofield v. Day*, 20 Johns., 102. Interest in Massachusetts is limited to six per cent.; an excess stipulated for, subjects the party enforcing the contract to a forfeiture of threefold the whole amount of interest — which,

in this case, amounts to thirty-six per cent. R. S. Mass., ch. 35; *Sumner v. Williams*, 1 Met., 398; *Parker v. Bigelow*, 14 Pick., 436. And this court should make such deduction from the complainant's claim. *Little v. Rogers*, 1 Met., 108. The extent of advances made to *Otis* on this note was but $11,200; a forfeiture of thirty-six per cent. on that sum is $4,032, leaving balance $7,168. The complainant, however, has received (as appears from this case) the sum of $14,896. The equities of the case are in favor of the appellee.

2. Aside from usury, how much had *Otis* received November 1, 1846, and how much was then due? The extent of consideration proved, aside from the answer, is. $9,000 advanced at Southport, and to warrant the decree appealed from, the court below must have allowed to complainants, not only the difference between the invoice of the goods at Boston, and the price for which Wiggin sold them to Stimpson at Detroit, which amounted to $1,031.55, but a large amount of other matters. There is no legal or moral obligation that *Otis* should pay any portion of the $1,031.55. By the terms of the then existing contract between Wiggin & Co. and *Otis*, the merchandise was to remain under the control of Wiggin & Co. There was no sale of the goods to *Otis*. R. S., 338, § 3. *Otis* had no right of property in the merchandise, and when the promise was extorted from him, he was virtually under duress. *Outwater v. Dodge*, 7 Cow., 36. The promise to assume that loss was extorted from *Otis* by taking advantage of his necessities, under the guise of friendship. *Administrators of Hough v. Hunt*, 2 Ham., 501. And to take advantage of one's necessities is as bad as to take advantage of one's weakness. *McCouts v. Bee*, 1 McCord's Ch., 390; *Wheelan v. Wheelan*, 3 Cow., 537; *Brice v. Brice*, 5 Barb., 533–540. Equity will not enforce a contract grounded in fraud, circumvention or misrepresentation. *Seymour v. Delancey*, 3 Cow., 445; *Osgood v. Franklin*, 14 Johns., 527; *Livingston v. Peru Iron Co.*, 2 Paige, 393; *McAllister v. Barney*, 2 Hayw., 290. Therefore there was no legal or moral

obligation on the part of *Otis* to make up such deficiency — and the giving of the note *pro tanto*, is void. *Geer and Wife v. Archer*, 2 Barb., 420; *Slade v. Halstead*, 7 Cow., 322; *Schoonmaker v. Roosa*, 17 Johns., 301–304; *Bank of Troy v. Topping*, 9 Wend., 272; *Hall v. Farmer*, 2 Comst., 553–7; Rev. Stat., 338, § 2, sub. 2. The cause and true consideration of the note and mortgage can be shown by parol, to be other than as expressed by the instruments. *Jackson v. Brown*, 7 Cow., 13–18; *Jackson v. Stackhouse*, 1 id., 127; *Whittick v. Kane*, 1 Paige, 202; *The People v. Fleming*, 12 Wend., 246; *Cross v. Huntley*, 13 id., 386; *Payne v. Cutler*, 13 id., 605; *Gillett v. Campbell*, 1 Denio, 520. Therefore the difference between the invoice at Boston, and sale by Wiggin to Stimpson, at Detroit, being $1,031.55, ought not to be charged to *Otis*, nor allowed in this suit against him.

3. The bill required an answer under oath — and it being so made, and responsive to the bill, it is conclusive, unless disproved by two witnesses — or by one, with pregnant circumstances. *Stafford v. Bryan*, 1 Paige, 242; *S. C.*, 3 Wend., 535; *Woodcock v. Bennett*, 1 Cow., 742–4 and note; *Cluson v. Morris*, 10 Johns., 540–1, 543; *Murray v. Blatchford*, 1 Wend., 595–6; 1 Edward's Ch., 442; 2 Johns. Ch., 92; 6 Wheat., 468; 3 id., 527. The bill states that *Otis*, "by his note, *became justly indebted* to James S. Wiggin, of Boston, for value received," in the sum of $15,000, and charges that the "money mentioned in the note *is due and owing and still remains unpaid;*" and prays that the complainants "may be paid the full amount of said sum." *Otis* is bound to answer the *charging* part of the bill, as well as the stating part. *Smith v. Clark*, 4 Paige, 368. *Otis*, answering on oath, denies that he ever became *justly indebted* to Wiggin, in the note, beyond $10,352.17 or $11,163.72, at most, and he discovers fully the whole transactions out of which the note and mortgage arose. The answer is strictly responsive to the bill. *Dunham v. Jackson*, 6 Wend., 22; *Hopkins v. McLaren*, 4 Cow., 667–677; *Jack-*

*son v. Hart*, 11 Wend., 343–352–3. Wiggin is an incompetent witness. His deposition should be suppressed on the ground of his interest. *Jackson v. Stackhouse*, 1 Cow., 126; *Fuller v. Townsend*, 5 Denio, 184. And the defendants are entitled to have the bill dismissed *upon the pleadings alone*, without looking into the proofs. *Jackson v. Hart*, 11 Wend., 353, citing *Smith v. Brush*, 1 Johns. Ch., 459; 6 Vesey, 183; 18 Vesey, 12, 336; 2 Atk., 19. Besides, the answer is sustained, in every material statement, in regard to the cause and consideration of the note and mortgage, by the depositions of O'Connor and Willis, witnesses to the transaction. These proofs, aside from the answer, establish the fact that but $9,000 of the $15,000 note and mortgage had been advanced to *Otis*, at the time they were made and delivered to Wiggin. That $6,000 thereof was to cover advances to *be made in futuro*, of which but about $2,000 were advanced thereafter. It being established that the note and mortgage was to secure the $9,000 paid, and "to secure sums to be advanced" (*James v. Morey*, 2 Cow., 292), the *onus probandi* that such advances were in fact made, is cast upon the complainants; it is not for the defendants to prove the negative, that they were not made. *Gillett v. Campbell*, 1 Denio, 522; *Costigan v. Gould*, 5 Denio, 290–295. The acts and declarations of Wiggin, during the negotiations, and immediately afterwards, being a part of the *res gestæ*, are admissible evidence against the complainants, his assignees; even the declarations of an agent are evidence. *McCormick v. Bacon*, 10 Wend., 104; *Thallhimer v. Brinckerhoff*, 6 Cow., 90–100; *Mott v. Kitt*, 10 Johns., 478; *Fenner v. Lewis*, 10 Johns., 38–44; *Jackson v. Myers*, 11 Wend., 534–7. The interest of Wiggin is identical with that of the complainants; his declarations, though made long after the making of the note and mortgage, are admissible, and the *onus* of proving a consideration paid by complainants for the note and mortgage lies on them. *Brisbane v. Pratt*, 4 Denio, 63, and authorities cited.

4. A mortgage is a mere security before foreclosure. *Astor*

*v. Hoyt,* 5 Wend., 615–16 ; *Edwards v. Farmers' Fire Ins. Co.,* 21 id., 467, 491 ; *Jackson v. Myers,* 11 id., 537.

The note and mortgage are construed as one instrument, and as such, the note is not commercial paper. *Coddington v. Davis,* 1 Comstock., 186 ; *Cornell v. Todd,* 2 Denio, 130. A sealed note is not negotiable. *Clark v. Farmers' Man. Co.,* 15 Wend., 256. The assignment of the note or debt carries the mortgage as an incident. *Pattison v. Hull,* 9 Cow., 747 ; *Jackson v. Blodgett,* 5 Cow., 202 ; *Wilson v. Troup,* 2 id., 196 – 231 ; *Runyan v. Mercereau,* 11 Johns., 538 and note. But the assignment of the mortgage, severed from the debt, passes nothing ; it is gone for all purposes, for, " once a mortgage, always a mortgage." *Clark v. Henry,* 2 Cow., 324 ; *Pattison v. Hull,* 9 Cow., 747 ; *Jackson v. Blodgett,* 5 id., 206 ; *Langdon v. Buel,* 9 Wend., 84 ; *Jackson ex dem v. Bronson,* 19 Johns., 326. The assignment by Wiggin, of June 19, 1849, to complainants, is of Wiggin's right and title " to " certain premises " described in " a certain deed " (the mortgage in question) " under the same conditions as are contained in said deed," " and all my right," etc., " in the debt and note " (describing it) " which is secured by said conveyance to me " and " subject to all the rights of Otis unto the same as specified therein," etc. This is not the *bona fide* purchase of commercial paper, but an assignment of the mortgage and the note, and complainants are now seeking their remedy on the mortgage, and as such are subject to all the incidents, equities and defenses against that remedy. *Coddington v. Ray,* 20 Johns., 637 ; *Root v. French,* 13 Wend., 573 ; *Payne v. Cutler,* 13 id., 606 ; *Pendleton v. Fay,* 2 Paige, 205–6 ; *Brisbane v. Pratt,* 4 Denio, 64 ; *Jackson v. Myers,* 11 Wend., 538. The personal and commercial relations between Wiggin and complainants were such as to lead to the violent presumption, that they were cognizant of the whole consideration of the note and mortgage — at least sufficient to throw the *onus* on complainants to show that they were *bona fide* purchasers, had they pursued their legal remedy on the note, instead of

foreclosing the mortgage. Besides they purchased with notice of the defense. *Whittick v. Kane*, 1 Paige, 202–5; *Jackson v. Van Valkenburg*, 8 Cow., 260; *Webster v. Wise*, 1 Paige, 319; *Corning v. Murray*, 3 Barb., 654; *Root v. French*, 13 Wend., 572. The assignee of a mortgage takes it subject to all the equities subsisting between the mortgagor and mortgagee. *James v. Morey*, 2 Cow., 246; *Murray v. Groveneur*, 1 Johns. Cas., 438; *Clute v. Robinson*, 2 Johns., 595; *Bank of Niagara v. Roosevelt*, 9 Cow., 409; *Stafford v. Van Rensselaer*, 9 Cow., 316; *Chamberlain v. Day*, 3 Cow., 353; *Murray v. Lillburn*, 2 Johns. Ch., 479; *Coleville v. Tradesmen's Bank*, 1 Paige, 131; *Webster v. Wise*, id., 319; *Root v. French*, 13 Wend., 570; *Beebe v. Bank N. Y.*, 1 Johns., 550; 1 Vesey, jr., 249.

HUBBELL, J. This suit is founded on a note and mortgage, executed by *Roswell C. Otis* and wife to James S. Wiggin, payable in Boston. Both instruments were executed and delivered at Southport in Racine county. Wiggin afterwards, and before the maturity of the note, assigned and conveyed to the appellants all his right, title and interest in the note and mortgage, and in the lands conveyed by the mortgage, for the consideration of $15,000, as expressed in the assignment. The appellants filed their bill of foreclosure, claiming to be *bona fide* purchasers of the note for a valuable consideration without notice, and alleging that the whole amount of the principal and interest secured by the note and mortgage remained due and unpaid.

The *bona fides* of the assignment is denied by the answer of *Otis*.

The first question for consideration is, whether the appellants, as assignees and holders of the note, are protected from any defense which may exist between *Otis* and Wiggin, the original parties to the transaction?

The rule is well settled that the mortgage is a mere incident to the note, and may be extinguished by its payment, or passed

by its transfer. 4 Johns., 43; 5 Cow., 200; 1 J. J. Marsh, 257. And I am not prepared to deny that a negotiable promissory note, secured by a mortgage, may be passed before maturity, in the course of business, like other negotiable paper; and that the transferee may take and hold it, free from all equities between the maker and payee. The mortgage in such case would pass as an incident to the note, and might be enforced by the holder in spite of any existing equities between the mortgagor and mortagee. This doctrine is sustained by respectable authorities, and by the reason and sound policy which have long ruled in relation to commercial paper. Powell on Morts., 908 and note.

But the respondents contend, and I think, rightly, that the assignment of Wiggin to the appellants *reserves to Otis* all the rights he had against the assignor. On this point the assignment must speak for itself. It is an aptly drawn instrument under the hand and seal of the mortgagee, and purports to " transfer, assign, set over and convey," to the appellants all " his right, title, interest and estate, in and unto certain premises " (setting forth the lands described in the mortgage), " with all (his) right, title, interest and estate therein, and the *debt* and *note* which is secured by said conveyance;" " with all the privileges, rights and appurtenances and benefits and advantage accruing therefrom, *subject, however, to all the rights of the said Roswell C. Otis and his said wife, in and unto the same.*"

It is difficult to understand what the parties intended by the last clause of this instrument, unless it was to preserve to *Otis* all the equities which existed between him and Wiggin. Courts are bound to give language its ordinary and current meaning, unless words are used in a special and technical sense (which is not the case here), or unless such construction would be in conflict with the evident purport and intention of the instrument. The construction contended for here is not only clearly consistent with the apparent design of the instrument, but is consonant with a sound rule of equity and mor-

ality.   It would have been unjust and unconscionable in Wiggin, although it might have been technically legal, to cut off any defense which *Otis* might have to a part of his demand, by a transfer of the note to *bona fide* holders for a valuable consideration, without notice.   It is sufficient on his part that he has employed language which precludes any such imputation upon his motives.   And as to the appellants, they sit in his seat, and must be content to enforce their note and mortgage, as he might have enforced them.   5 Johns. Ch., 341.

I proceed to enquire whether *Otis* had any defense to the mortgage.

The appellants allege in their bill that " the said *Roswell C. Otis*, by his certain note or obligation in writing under his hand, duly made and executed at Southport, aforesaid, became *justly indebted* to James S. Wiggin, of Boston, aforesaid, *in the sum of fifteen thousand dollars*, payable one year after date, with interest after one year, at the rate of twelve per cent." And they expressly " *charge the fact to be*, that nothing has been paid on the said note and mortgage ; and that the *money mentioned in said promissory note*, and secured by said indenture of mortgage, *was due* on the 4th day of November, 1846, *agreeable to the said note* or obligation in writing, and that no part of the same has been paid, etc."

The bill calls for an answer on oath from *Otis*, and he was bound and might have been compelled to answer all its material allegations.   What allegations then were material? Surely it was material to determine whether a debt of fifteen thousand dollars was in fact justly due and owing.   Whether the mortgage was given to secure just that sum ; and if not, what sum ?   And what sum was actually due and owing? On these points, *Otis* properly responded to the bill.   And having answered, his statements are conclusive against the appellants, unless contradicted by two witnesses, or by one witness, with strong corroborative circumstances.   These are well settled principles in general practice.

There is a mass of confused and irrelevant matter dragged into the answer, which is equally discreditable to counsel and oppressive to the court.* But one thing is stated clearly and positively, to wit: That no debt of fifteen thousand dollars was owing by *Otis* to Wiggin, at the execution of the mortgage; and, on the contrary, that the note and mortgage were given to secure a balance of account and future advances. On this point the answer is contradicted solely by the evidence of Wiggin, who was a witness on the part of the appellants. And I have been unable to discover any circumstances satisfactorily proved, which sustain his evidence. Strong objections were urged to the competency of Wiggin as a witness.

As the mortgagee and assignor, he was not necessarily objectionable. But the assignment states, and he swears, that the transfer was made on the full payment to him of fifteen thousand dollars, the entire sum purporting to be secured by the note and mortgage. And it is open to question, whether, if the recovery in this case is reduced by proof that no debt of fifteen thousand dollars ever existed in his favor, he may not be liable to the assignees for the deficiency on the ground of fraud. I prefer, however, to regard him as a competent witness. What, then, is the result? In the absense of other proof, one witness does not overcome the answer. 5 Peters, 99; 6 Vesey, 183; 18 id., 12; 1 Johns. Ch., 459; 11 Wend., 353. But the answer does not stand alone. It is strongly supported by the evidence of O'Connor and Willis, respondent's witnesses, who were present at the negotiation at Southport, which resulted in the execution of these securities. Taking the answer in connection with this evidence, I am unable to resist the conclusion at which the circuit court arrived; that the mortgage and note were intended as a general security, partly to cover a balance due and partly to cover advances thereafter to be made by

---

*It is due to the counsel who argued the cause to say, that the answer was put in before they were employed.

Wiggin. If such were the fact, it is contended by the respondent's counsel, that the appellants have the burthen of showing how much was in fact advanced, and what sum is actually due. I find no decision precisely meeting this point. The note and mortgage were *prima facie* evidence of a debt of $15,000. The respondents have met this proof, by showing that no such debt existed, and that the amount secured depended on the acts of the mortgagee. I think, on general principles, the appellants have the *onus* of showing what advances were made. 1 Hill, 150; 1 Denio, 522; 5 id., 290; Cowen & H., notes, 476; 7 Cranch, 34.

Another objection is made to the appellant's recovery, which opens a wide range of inquiry.

The respondents contended that the note and mortgage, being made to draw interest at twelve per cent., were usurious under the laws of Massachusets, which allow of only six per cent. A sufficient answer to this objection might be found in the fact that no interest was payable until the money became due. The note was payable at "one year from date," and was to draw interest "*after* one year, at the rate of twelve per cent. per annum." If the money had been paid at the maturity of the note, no interest would have been demandable. The legal obligation was to pay at the end of a year, and the maker might have discharged his obligations without paying any interest. If he neglected to pay, or, in other words, violated his agreement, the interest which follows might properly be regarded as a penalty to recover damages. 4 Peters, 225. At all events, it seems to me to be a solecism in law to hold an instrument usurious which may be legally discharged by the obligor agreeably to its terms without paying any interest at all.

But waiving this consideration, how far is the objection tenable? The note and mortgage were executed and delivered in Wisconsin, where twelve per cent. interest was lawful; but the money was payable in Boston. -

By the statute of Massachusetts, in case the note had been, sued in that' state, the defendant might have set up usury, *in a special plea*, and by so doing, reduced plaintiff's recovery, by a sum equal to three times the excess above six per cent. Rev. Stat. Mass., ch. 35.

But this statute expressly declares that no contract whereby usurious interest is secured shall be thereby rendered void. Id., ch. 35, sec. 2. The provision only extends to a reduction of the recovery, upon a plea filed for that express purpose.

In the language of their own courts, it " professes only to regulate the remedy upon a usurious contract." And that remedy must be applied in an action in the courts of Massachusetts. The courts of this state are not bound by their remedial laws. The remedies we enforce are those provided by our own laws.

This is a general principle, so universally acknowledged as scarcely to need the support of authority. But there happens to be a case precisely in point :

In *Gale v. Eastman*, 7 Met., 14, the supreme court of Massachusetts refused to enforce the usury law of New Hampshire, which is almost identical with her own, upon a note made in New Hampshire, and which clearly would have been held usurious in that state. Had the statute vitiated or affected the contract itself, the rule would have been different.

It is said, however, that this note being. made payable in Boston, is to be governed in its construction and legal effect, by the laws of the state where it is to be performed. The general rule unquestionably is, that *"the lex loci contractus controls the nature, construction and validity of the contract."* 2 Kent, 454. And a contract, valid *where it is made*, is valid *everywhere*. From this rule, however, contracts made in one country, but *to be performed* in another, have very generally been excepted. And the reason of the exception is, that the parties are supposed *to intend* to be governed by the laws of the country where their contract is to be performed, or to take effect.

For this reason, a note made in Canada, but payable in England, wherein the rate of interest was not specified, has been held to draw interest according to the laws of England. And so a bond made in England and payable in Ireland, in which the rate of interest was not fixed, was held to bear *Irish* interest. *Champart v. Lord Ranelagh*, approved by WILMOT, J., in *Robinson v. Bland*, 2 Burr., 1084. And the same principle has been asserted in a great variety of cases on both sides of the Atlantic. But I think the doctrine of construing all contracts by the law of the place of performance has sometimes been carried too far; and when applied rigidly, it defeats the very reason on which the rule is founded. This doctrine is derived from a *dictum of* HUBERUS, in his celebrated work *De Conflictu Legum* — a work which had the great merit of bringing order out of the immense confusion prevailing in continental Europe on the subject of the *lex loci;* and which remains to this day a high authority, both with the civilians and common law judges. 2 Kent's Com., 454. But it may be well worth our while to go back and examine the language of HUBERUS himself.

After laying down the general and acknowledged principle, that contracts are to be governed by the law of the place where they are made — the *lex loci contractus* — the learned author states an exception to the general rule in these words:

"*Verum tamen non ita præcisa respiciendus est locus in quo contractus est initus, ut si partes alium in contrahendo locum respixerint, ille non potius sit considerundus. Nam contraxisse unus quisque in eo loco intellegitur, in quo ut solveret, se obligavit.*"

The first portion of this extract contains the *principle* and the *reason* of it; the latter part is a mere *dictum*, or rule of construction. As I understand the doctrine, it is that the *place of making the contract* is not to be so exclusively regarded, but that, when the contracting parties themselves had reference *to another place*, that may be regarded. That is, the intention of the parties shall govern when it is made manifest. And

hence, the author adds, every person *is deemed* to have contracted in the place where he binds himself that his contract shall be performed. Now, this is generally, but not universally true. And the same reason which requires a contract to be governed by the law of the place of performance, when it is intended so to be, shall require it to be governed by the place where it is made, when such was the design of the parties. When the court can see clearly, either from the contract itself or from evidence *aliunde*, that the parties intended to have it governed by the law of the place of its actual execution; as, when, for instance, the contract would be lawful at that place, and not lawful at the place of performance, then clearly the intention of the parties ought to prevail.

To adopt a different rule of construction would defeat a contract made in good faith, in the usual course of trade and business. Courts are bound so to construe all contracts, if possible, as to give them effect rather than to defeat them. Lord HALE quaintly says, " the judges ought to be curious and subtle to invent reasons and means to make acts effectual, according to the just intent of the parties." 2 Lev., 9. And if the doctrine of HUBERUS required a different mode of construction (which surely it does not), it would have to give way to the older and better rule of COKE: " *Ut res magis valeat quam pereat.*"

In this country, composed of widespread and independent states, differing in governments and laws, where multitudes of contracts daily spring up, diversified in their form and purpose, and having reference to subject matters as remote as the persons contracting, it is of vast importance that a rule of construction should be adopted which will give efficacy to the intentions of the parties, wherever they may make their engagements or undertake to fulfill them. And if a too rigid rule has prevailed, or if a mistaken application has sometimes been made, of a rule founded in reason, it is well to restore our decisions

from the path of mere authority, to that of common sense and justice.

Though the citizens of almost all the states are connected more or less in business transactions, the laws regulating the interest of money and the remedies under them are exceedingly diversified.

Occasions often arise in which it is desirable to have the rate of interest prevailing in one state secured by a contract which is to be performed in another. Is there any good reason, either in law or public policy, why the intentions of the parties to such a contract should not prevail? Why such a contract should not be enforced according to its terms, clearly and definitely expressed, whether the suit be brought in the place of its execution, or in the nominal place of its performance?

Laws relating to interest or usury cannot surely at this day be regarded as involving a question of morality. And where there is no pretense of any attempt to evade the law of the place where the contract is to be performed, I see no ground for refusing to enforce it in the state where it was made; and if there, everywhere.

This principle has already been enforced to this extent, by the learned court of a sister state, if I understand rightly the case of *Depeau v. Humphreys*, decided in the supreme court, Louisiana. 20 Martin, 1.

I have not been able to examine the reported case; but Chancellor WALWORTH, of New York, himself an authority of high consideration, thus speaks of the decision: "That court came to the conclusion, in which decision I fully concur, that in a note given at New Orleans, upon a loan of money made there, the creditor might stipulate for the highest legal rate of conventional interest allowed by the laws of Louisiana, *although the rate of interest thus agreed to be paid was higher than that which could be taken upon a loan by the laws of the state where such note was made payable.*" In other words, the note was sued in the

state where it was made, and the law of the state where it was to be performed was not allowed to prevail.

But that decision goes further than the case now under consideration requires. It is one thing to enforce a contract entirely personal in its character, and which may be prosecuted wherever the person or property of the obligor is found, and quite a different thing to enforce a security upon land, which must necessarily be prosecuted in the place where the land is situated. The appellants are seeking to recover upon a mortgage executed in Wisconsin, upon lands in Wisconsin, and made in conformity to the laws of Wisconsin.

It may be well supposed that the parties intended to contract under the laws of Wisconsin, and to seek their redress under those laws, although the money secured was made payable in another state. On the continent of Europe the distinction has long prevailed, between what is termed personal and real statutes. " The laws which regulate the condition, capacity or incapacity of persons are personal statutes; and those which regulate the quality, transmission and disposition of property are real statutes." 2 Kent's Com., 456.

This distinction was asserted as a rule of judicial action, by Chancellor WALWORTH, in the case of *Chapman v. Robinson*, 6 Paige, 627. That was a loan of money made in England, upon the security of a bond and mortgage executed in New York, upon lands in that state, but delivered in England and payable there, where the money was in fact placed to the credit of the borrower. The rate of interest was seven per cent. per annum, a rate legal in New York, but usurious in England.

Upon a bill filed to foreclose the mortgage, and the defense of usury set up, the Chancellor held the mortgage valid, and decreed its payment, with seven per cent. interest. In the course of a learned and able discussion of the subject, he remarks:

" It is an established principle, that the construction and validity of contracts, which are purely personal, depend upon

the laws of the place where the contract is made, unless it was made in reference to the laws of some other place or country, where such contract, in the contemplation of the parties thereto, was to be carried into effect or performed." 2 Kent's Com., 457; Story's Conf. of Laws, 227, sec. 272.

On the other hand, it appears to be equally well settled by the laws of every state or country, that the transfer of lands or other heritable property, or the creation of any interest in, or lien or incumbrance thereon, must be made according to the *lex situs*, or the local law of the place where the property is situated." And after discussing at length the effect of making the money payable in England, and the views of Mr. Justice STORY and Chancellor KENT upon kindred cases, he says: " But neither he nor Chancellor KENT appear to have expressed any opinion upon the precise question presented in the present case, in which the rate of interest reserved *is allowed by the law of the place where the mortgaged premises are situated, and where the bond and mortgage were actually executed, but is more than could be legally reserved by the law of the place where the money was received, and where, by the legal construction of the contract, it must be deemed to be payable.* Upon a full examination of all the cases to be found upon the subject, in this country or in England, none of which, however, appear to have decided the precise question which arises in this cause, I have arrived at the conclusion that this mortgage executed here, and upon property in this state, being valid by the *lex situs*, and which is also the law of the domicil of the mortgagor, *it is the duty of this court to give full effect to the security, without reference to the usury laws of England*, which neither party intended to evade or violate by the execution of a mortgage here."

And again, he says: " And being actually *made in reference to our laws*, and to the rate of interest allowed here, *it must be governed by them*, in the construction and effect of the contract, as to its validity. See also 7 Paige, 632. I am aware that these views have received reproof in a high quarter (Story on

Conf. of Laws, sec. 293 c. and note), but I think, more in deference to authority than reason.

But the case of *Chapman v. Robinson*, both in fact and in reason, runs parallel with that under consideration; and the decision in the one must be held conclusive in the other. It seems to me that the learned court of New York has rescued a sound principle from the conflict of authorities, and made an application of it, which, however novel or unprecedented, must stand the test of time and scrutiny. To have decided differently would have defeated the intention of the parties and rendered nugatory a contract, entered into in good faith and agreeably to the laws of the great and commercial state where it was executed. And upon this ground, if there were no other defense to the mortgage of *Otis*, this court would be bound to decree its full payment, with 12 per cent. interest, according to its terms and in conformity to the laws of Wisconsin, without reference to the usury laws of Massachusetts, which there was no intention to evade or violate.

The note and mortgage, however, as I have before stated, were given not for an actual debt of fifteen thousand dollars, but to secure a less sum, partly advanced prior to their execution, and partly to be advanced afterwards. What interest was to be paid, if any, upon the sum actually secured, is a matter of inference or conjecture. Though the members of this court agree in the opinion that interest, at some rate, ought to be allowed, they do not concur in the rule to be applied. As no rate was specified, and as the money was to be paid in Boston, it is urged that six per cent., the legal rate of interest in Massachusetts, should govern. Again, as the action is brought in this state, and this is the *situs* of the property to be made available as a security; as this is the domicile of the mortgagor, and as the court holds the parties to have had reference to the laws of this state in making their contract, it is urged that seven per cent., the legal rate of interest in Wisconsin, should prevail. So the court below determined. Again, it is urged that the

parties themselves having agreed upon twelve per cent., as the rate of interest, in case the entire fifteen thousand dollars had been advanced, they must be deemed to have intended that rate of interest to be charged upon any less sum advanced.

It becomes unnecessary, however, for the court to make any decision upon this mooted question. By a stipulation entered into between the parties on the ninth of May, 1849, the respondent has paid the sum of eleven thousand and two hundred dollars; and the decree of the circuit court, from which the present appeal is brought, directs the payment to the appellants of a further sum of $135.77 — making in all $11,335.77.

After a full and careful examination of the pleadings and testimony, we are none of us able to discover that James S. Wiggin, the mortgagee, had paid or advanced to or for the mortgagor, any sum or sums which, with interest at twelve per cent. from the date of payment, would amount to $11,200 on the ninth of May, 1849. And if the case were now open for an original decree on the merits, this court would be compelled to find a less sum due than was found by the court below. It is not necessary, therefore, to decide what rate of interest ought to govern, nor need we enter into a detail of the facts from which we draw our conclusion, as to the actual amount due from *Otis* to Wiggin.

It is sufficient that it has been already paid or decreed to be paid; and the appellants have no further rights in the premises.

Decree of the court below affirmed, with costs.