Thompson, Justice,
 

 delivered the opinion of the court. — The appellee, N108] who was the complainant in the court below, and administratrix of her late husband, filed her bill in the circuit court for the district of Columbia, and for the ’"county of Washington, for the purpose of obtaining an injunction to restrain the Union Bank of Georgetown from all further proceedings on a judgment recovered against her as administratrix, upon a promissory note for $2200, bearing date the 21st of November 1814, which had been indorsed by her late husband, and discounted by the Union Bank, for the accommodation of Jeremiah Merrill, the maker. The judgment was entered in December 1817.
 

 The bill states that suits were instituted in the circuit court upon the note, against the maker and indorser ; and that the complainant was called upon by the attorney of the bank, and requested to confess a judgment on the note, and was, at the same time, assured by the attorney, if she did so, and did not dispute her liability upon the note, the bank would immediately proceed by execution, to make the amount thereof from Merrill, the principal debtor, who, he assured her, had sufficient property to satisfy the same ; and advising her, that she would be thus saved from liability for the debt, prevailed on her to make no defence against the suit at law, but voluntarily to confess a judgment thereon.
 

 The bill charges, that at the time of confessing the judgment, a valid legal defence existed against said suit, which would have defeated the plaintiffs’ right to recover on the indorsement; the plaintiffs not having made due and legal demand, and given due and legal notice, so as to bind the indorser. That the attorney of the bank well knew the same, and to prevent the complainant from contesting the same, made the proposition above stated. The bill further charges, that when the judgments were obtained upon the note, Merrill resided in Georgetown, and had' sufficient property to satisfy and pay the judgments ; and that the same might then, and for some time afterwards, have been recovered by process of execution, issued either against the body or the goods of Merrill. 1 And that the complainant repeatedly and earnestly called upon and urged the plaintiffs to issue execution against Merrill, according to the agreement and understanding upon which she had confessed judgment; but that the plaintiffs continued to indulge Merrill, and permitted him to leave the district, and take with him all his property, beyond the process of the court,; nor have they taken *i no! any ^effectual and proper means to recover the debt from Merrill, as -* bound by their agreement to do. The complainant further states, that she is informed and believes, that Merrill is in insolvent circumstances; and that now, the bank, having by their misconduct and breach of faith, lost the means of recovering the judgment from Merrill, unjustly and unreasonably demand payment of the complainant, and threaten to proceed against her on the judgment, which she believes they mean to do.
 

 The defendants in the court below, in their answer, deny the agreement alleged to have been made by their attorney ; and aver that the judgment was not confessed voluntarily, but contested in every stage, until the trial
 
 *71
 
 term, and when the cause was actually called for trial, the complainant’s attorney, knowing he had no good defence, confessed the judgment. They deny that they ever authorized or directed their attorney to hold out and inducement to complainant to confess the judgment, or to make any such persuasions and promises as are set forth in the bill; that they would have been wholly superfluous and unnecessary, as the complainant was legally and justly liable and bound for the payment of the note. They deny that the complainant had any valid legal defence to the action, but aver that payment of the note was legally demanded, and that due notice of non-payment was given. They deny that when the judgment was obtained, or at any time afterwards, Merrill had sufficient property unincumbered, whereon any execution could have been levied, and the money made. They deny that they have been remiss and inattentive in obtaining payment from Merrill.
 

 These are the only parts of the bill and answer which it is deemed material to notice. Depositions having been taken, the cause was set down for a final hearing, upon the pleadings, exhibits and depositions, and the court decreed a perpetual injunction. From which decree, an appeal was taken to this court.
 

 The first inquiry that seems naturally to arise in this case is, whether the agreement or contract set up in the bill, to have been made between Wiley, the attorney of the bank, and the complainant in the court below, has been established *by sufficient evidence, according to the rules and principles which prevail in courts of equity. It is denied by the answer, *■ that such agreement was made. The agreement is certainly very fully proved by one witness. G. Cloud states in his deposition, that he well recollects the conversation between Mrs. Geary and Mr. Wiley, the attorney of the bank, on the subject of her confessing the judgment, and understood, from the conversation of both of them, that if she would agree and confess judgment, she was to be cleared, and the money to be made out of Merrill’s property, as Wiley said, he had ascertained, that Merrill had property sufficient to satisfy the debt, that was clear of incumbrance; and that it was expressly on these conditions, that she confessed judgment. This witness, in his answer to another interrogatory, states that Mrs. Geary was to be cleared (as he expresses it), by instantly levying on Merrill’s property. From which it is clearly to be inferred, that it was not intended, that she should be absolutely released from the judgment, but that her discharge would result from the satisfaction to be obtained
 
 from
 
 Merrill,
 
 of
 
 which, from the assurances of Wiley, little or no doubt could be entertained. Some criticisms have been made at the bar, upon the deposition of this witness. It has been supposed by the appellant’s counsel, that he speaks only of one conversation
 
 ;
 
 and that, after the judgment was entered. The inference that there was but one conversation is drawn from the printed statement of this deposition, where the witness is stated to have sworn that all the knowledge he had of the judgment was from a conversation between Mrs. Geary, Mr. Wiley and others. But in the deposition, as contained in the record, his knowledge is stated to have been derived from the conversation he heard between those persons. And he afterwards speaks of a multiplicity of conversations he heard on the subject, between the years 1815 and 1820, and evidently referring to periods both before and after the entry of the judgment. The agreement having been fully and satisfactorily established by this witness,
 
 *72
 
 the question arises, whether there are any circumstances or other testimony disclosed in the case, to sustain the bill against the denial in the answer.
 

 It is certainly a well-settled rule, that on a bill praying ^relief when the facts charged in the bill, as the grounds for obtaining the decree, are clearly and positively denied by the answer, and proved only by a single witness, the court will not decree against the defendant. And it is equally well settled, that where the witness on the part of the complainant is supported and corroborated by circumstances sufficient to outweigh the denial in the answer, the rule does not apply. 9 Cranch 160.
 

 What are the circumstances in this case to meet and outweigh the denial in the answer ? It is to be borne in mind, that the bill does not charge the agreement to have been made with the bank, but with their attorney. The denial by the bank is not, therefore, of any matter charged to have been within their own knowledge. They could, therefore, only speak of their belief, or from information received from their attorney, and not from their own knowledge of the transaction. The denial of their ever having authorized or directed their attorney to hold out any inducements to the complainant to confess judgment, or to make to her any such promise as is set forth in the bill, is not in answer to any allegation in the bill. The bank is not charged with having specially authorized or directed the agreement to be made. But it is charged as the act of their attorney ; and whether this was within the scope of his authority, as attorney, in the suit, will be hereafter noticed.
 

 There are other circumstances which go very far to take this case out of the application of the rule which requires corroborating evidence to support the testimony of a single witness, against the answer. This is an injunction bill, filed upon the oath of the complainant. An answer, in all cases, according to the course and practice of courts of chancery, must be sworn to ; unless dispensed with by order of the court, under special circumstances. In the present case, the answer being by a corporation, it is put under their common seal, unaccompanied by an oath. And although the reason of the rule, which requires two witnesses, or circumstances to corroborate the testimony of one, to outweigh the answer1, may be founded in a great measure upon the consideration that the complainant makes the answer evidence, by , calling for it ; *yet this is in reference to the ordinary practice of 11 J the court, requiring the answer to be on oath. But the weight of such answer is very much lessened, if not entirely destroyed as matter of evidence, when unaccompanied by an oath: and indeed, we are inclined to adopt it as a general rule, that an answer, not under oath, is to be considered merely as a denial of the allegations in the bill, analogous to the general issue at law, so as to put the complainant to the proof of such allegations. But it is not necessary, in the present case, to go thus far ; for, independent of all these circumstances, the testimony of Cloud is strongly corroborated by that of Magruder. He swears, that Wiley was the attorney and counsel for the bank when the judgment was confessed. That he understood from him, that he was authorized and requested by the bank, or some of its officers, to adjust all such cases, and get judgments confessed by the parties ; so as to avoid defences being made by the indorsers, with respect to the insufficiency of the demand and notice. And that Wiley requested him to call on the complainant, with a view to make such adjustment and
 
 *73
 
 that he advised her to see Mr. Wiley, who was friendly to her, and would not advise her to do anything against her interest.
 

 All these circumstances are abundantly sufficient to corroborate the testimony of Cloud, and outweigh the answer, even if it had been sworn to. The agreement, therefore, alleged in the bill to have been made by Wiley, the attorney of the bank, must be considered as fully established. And the next inquiry is, whether the attorney had authority to make such agreement, so as to bind the bank? It is necessary, here, that it should be understood with precision, what this agreement was. It seems to have been considered at the bar, by the appellants’ counsel, as an agreement to release and discharge the complainant from all responsibility, if she would confess judgment upon the note. But such is not the agreement set up in the bill. It is, that if the complainant would confess judgment, and not dispute her liability upon the note, he (the attorney) would immediately proceed, by execution, to make the amount thereof from Merrill, the principal debtor, who, he assured the complainant, had sufficient property to satisfy the same ; upon the faith of which promise she did confess the judgment. *It is pus not alleged nor pretended, that any special authority was given by the bank to their attorney, to make the agreement set up in the bill, and unless it fell within the scope of his general authority, as attorney in the suit, the bank cannot be held responsible. The general authority of the attorney does not cease with the entry of the judgment. He has, at least, a right to issue an execution, although he may not have the right to discharge such execution, without receiving satisfaction. 8 Johns. 36®; 10 Ibid. 220. The suit does not terminate with the judgment. Proceedings on the execution are proceedings in the suit. It was, therefore, within the scope of the general authority of the attorney in the suits, to postpone the execution on the judgment against the indorser, and issue one on the judgment against the maker of the note ; and this is the utmost extent of the alleged agreement. And indeed, it does not go thus far. The attorney only stipulated to issue an execution immediately, upon the judgment against Merrill. And if he had authority to issue an execution, of which there can be no doubt, he had authority to enter into an agreement that such execution should be issued, and thereby to bind the bank to the performance thereof. And that the bank has violated this agreement, by refusing to have an execution issued against Merrill, is abundantly proved. Repeated and urgent applications were made to them for that purpose, without effect; and the attorney, on application to him, admitted, that he had agreed to issue an execution immediatety after obtaining the judgment, and have it levied on Merrills property ; but said, the fault was not in him, but in the directors of the bank. No execution was issued, and Merrill was permitted to leave the district and remove his property beyond the jurisdiction of the court. And it may very fairly be concluded from the evidence, that had an execution been issued, the judgment might have been satisfied out of Merrill’s property. It was proved by several witnesses, that he had considerable property in his possession, which he took with him, when he removed from Georgetown. That he was a housekeeper-, had his house furnished, was the owner of hacks and horses, or had them in his possession. But, what is still more conclusive and satisfactory, is the declaration of Wiley, the attorney, who, for the purpose of in- r*114 ducing the complainant to confess the ^judgment, assured her that *-
 
 *74
 
 he had ascertained that Merrill’s property was clear of inc imbrance, and was sufficient to satisfy the judgment. This necessarily implied, that his knowledge was the result of particular inquiry on the subject.
 

 But it is objected, that this contract was without any consideration to support it. The consideration alleged in the bill is relinquishing all defence in the action, and confessing a judgment; averring that the complainant had a valid legal defence, which would have defeated the right of the bank to recover on the indorsement, no due and legal demand having been made of the maker, and notice thereof given to the indorser. It is unnecessai'y to examine, whether this defence would have been available or not. The validity of the contract did not depend upon that question. It is enough, that the bank considered it a doubtful question ; and that they supposed they were gaining some benefit by foreclosing all inquiry on the subject; and the complainant, by precluding herself from setting up the defence, waived what she supposed might have been of material benefit to her. That the bank considered it of some importance to shut out this defence, is fully shown by the testimony of Magruder. He says, it was known to the bank' before the judgment was confessed, that many of their suits against indorsers, for trial at that term, were in jeopardy, in consequence of a late decision of the court as to the insufficiency of the demand on the fourth, instead of the third day of grace. So that this question, at the time the contract was entered into, was considered by the bank, at least, doubtful. And to permit a subsequent judicial decision on this point, in their favor, as having a retrospective effect, so as to annul a settlement or agreement made by them, under a different state of things, would be sanctioning a most mischievous principle. In addition to this, there was a moral obligation resting upon the bank to do the very thing their attorney stipulated to do. Every consideration of justice and equity, in a moral, though not in a legal, point of view, called upon them to use due diligence to obtain satisfaction of the debt from the principal, before recourse was had to the surety. The decree of the circuit court granting a perpetual injunction is accordingly affirmed.
 

 Decree affirmed.