EUGENE GRASSELLI v. JOHN LOWDEN.

(No. 5,136.)

L. and G., being the owners and occupiers of premises adjacent to each other, made a contract providing that L. should discontinue an action already commenced for the abatement of a nuisance, and bring no other for five years; and that, at the end of that time, G. should discontinue the business of a chemical laboratory on the premises owned and occupied by him, or pay $3,000, liquidated damages.

*Held,* 1. That, upon reason and authority, the contract in this case is valid; that its object, really, was not a restraint of trade, the limited extent to which the trade wou'l have been restrained by a compliance with the contract being merely incidental.

2. The dismission of a suit brought for the recovery of a claim prosecuted in good faith, and not upon a mere pretense, and for oppression, is a good and valid consideration.

3. The fact that the plaintiff has ceased to own or occupy the premises, for the benefit of which the agreement was made, is not a good objection to the enforcement of the contract.

4. There can be no occasion for a covenant not to carry on a business, in itself a nuisance to an individual, for against such the law, without any covenant, would afford protection.

GENERAL TERM.—Proceeding in error to reverse a judgment of the special term, rendered in favor of Lowden for $3,000. The action was founded on an agreement in writing between Lowden and Grasselli. Certain averments are made in the petition showing the position of the parties before and at the time the agreement was made.

Grasselli had erected, and was conducting, on premises owned by him, a chemical laboratory. Lowden was the owner and occupier of premises in the vicinity; and, claim-

ing that the business carried on by Grasselli was a nuisance, brought an action, which action, he alleges, was prosecuted in good faith, pending which, on July 10, A. D. 1851, the agreement was entered into, whereby it was stipulated that Lowden was to discontinue the pending action, and bring no other for five years. At the end of that time Grasselli was to discontinue the business on the premises occupied by him, or pay $3,000 liquidated damages. The petition alleges that the time has expired, and that Grasselli still continues the business; and for this breach the action is brought, and the damages claimed.

The defendant filed his answer admitting the signing the alleged agreement that to get rid of being harassed by an unjust suit, and to buy his peace, he signed the alleged agreement; that his business was not a nuisance and in no respect injurious to plaintiff; and secondly, that since the making of the alleged contract, he had made such changes and improvements, as that, according to the true meaning and intent of said contract, he had ceased to carry on the laboratory business sought to be restrained and forbidden by said contract; and further, that the business he carried on since July 10, A. D. 1856, is as harmless to the plaintiff and the public as if no business whatever was carried on, and said premises were entirely vacant and unimproved.

Plaintiff demurred to the answer, the demurrer was sustained and judgment rendered for plaintiff.

*Corwine & Hayes* for plaintiff in error.

*Worthington & Matthews* for defendant in error.

GHOLSON, J., delivered the opinion of the court.

A question has been made, which it is proper first to examine, whether, upon his statement, Lowden can maintain an action? The objection made is, that the contract is in restraint of trade; and, though the restraint is partial, such circumstances are not shown as the rule of law, in cases of this description, requires to make the contract valid.

Eugene Grasselli *v.* John Lowden.

In considering contracts for the restraint of trade, there are two matters which should be kept distinct: first, the interest of the parties contracting for a restraint of trade; second, the nature and extent of the restraint. As to the first point, I do not find that there has been any doubt entertained, or that there is any conflict in the cases. The second has been very much discussed. There is a conflict in the authorities, and the rule of law on the subject has been varied.

1. As to the interest of the party contracting for a restraint of trade: Persons do not often enter into contracts, and pay a valuable consideration, to subserve a purpose or secure an object in which they have no interest. Rules of law to prevent such contracts are not often needed. The interference of the law is more usually required where there is an interest sought to be promoted in an improper way. The authorities, therefore, are much more numerous to show to what extent an interest may be protected by a restraint of trade, than what are the interests which may be protected.

The cases on the subject may, however, for the present purpose, be divided into two distinct classes. One, where the interest, of the party contracting for a restraint of trade, is connected with his carrying on the same trade, and the other where it is connected with the use or enjoyment of real estate. Falling under the first class are the well known cases of the purchasers of the good will of a business, artisans teaching the knowledge or secrets of a trade, and the like. Falling under the second class are cases where a landlord, in letting, or a vendor, in selling, requires a covenant not to carry on, upon the premises leased or sold, any trade which may affect the value of the property leased or other property retained; and under this class must fall any other contract which one man may make with his neighbor, affecting the use or occupation of that neighbor's property, for the purposes of any business or trade.

2. As to the nature and extent of the restraint: The decisions made upon this subject have been confined to the class of cases where the party contracting for the restraint

had an interest in the carrying on the trade or business restrained. The general expressions in these decisions had reference to that class of cases, and can not be properly understood or applied in any other view. Take, for example, the test which, it is said in *Horner* v. *Graves*, 7 Bingh. 735, cited in *Lange* v. *Werk*, 2 Ohio St. 528, should be applied to decide whether the contract be reasonable or not: It is this, "whether the restraint is such only as to afford a fair protection to the interests of the party in favor of whom it is given, and not so large as to interfere with the interests of the public. Whatever restraint is larger than the necessary protection of the party, can be of no benefit to either; it can only be oppressive, and if oppressive, it is, in the eye of the law, unreasonable. Whatever is injurious to the interests of the public is void, on the ground of public policy." Now, the case in which these remarks were made was one in which the interest to be protected was in the carrying on the trade restrained, as, indeed, are all the other cases, from *Mitchell* v. *Reynolds* to *Lange* v. *Werk*, and to no other interest could the remarks be properly applicable.

In the recent case of *Tallis* v. *Tallis*, 1 E. & B. 391–410, some of the previous cases, particularly *Mitchell* v. *Reynolds*, and *Hitchcock* v. *Coker*, are referred to, and it is said: "But, according to the tenor of the later decisions, the contract is valid, unless some restriction is imposed beyond what the interest of the plaintiff requires; and his interest has been considered to extend very widely. In respect of time the restriction may be unlimited; and though in respect of space there must be some limit, yet contracts have been supported where the area of exclusion was apparently greater than the area of the plaintiff's practice."

It is useless to multiply cases; in every one where anything is said about the reasonableness of a restraint, the reasonableness is regarded in view of the plaintiff's carrying on the same trade. It was at one time supposed that the court would inquire as to the adequacy of the consideration, but not since the decision, in the exchequer chamber, of *Hitchcock* v. *Coker*, 6 A. & E. 438. Since that decision the only

difficulty in the cases has been as to the reasonableness of the restraint, and it appears a matter of some doubt whether that be a question for the court or the jury. 1 E. & B. 413.

There are, undoubtedly, in some of the earlier cases, particularly *Mitchell* v. *Reynolds*, 1 P. Wms. 192, expressions which show that matters, other than a consideration, such as is required for other contracts, and the reasonableness of the restraint, may have been considered in deciding upon the validity of the contract; but such matters are not stated, and these general expressions have been explained and limited to the nature and extent of the restraint being the matter under consideration. Thus, in the case of *Horner* v. *Graves*, 7 Bingh. 735; 20 E. C. L. 310–313, the court, aware of the uncertainty and indefiniteness of the expression in *Mitchell* v. *Reynolds*— "a just and honest contract"—defines those words, "so as it is a reasonable restraint only." Now, if the general and sweeping remarks, with which the opinion in *Mitchell* v. *Reynolds* concludes, and which are cited by our supreme court in *Lange* v. *Werk*, 2 O. St. 528, be changed or corrected by inserting instead of "a just and honest contract" "a reasonable restraint only," and then the test to show what is a reasonable restraint, as heretofore cited, be applied, there can be no doubt as to the class of cases in contemplation. So, it has been said, the expression "consideration," in *Mitchell* v. *Reynolds*, ought never to have been supposed to require a statement of the consideration, for the purpose of showing its adequacy, but really had reference to what was necessary to enable the court to determine the reasonableness of the restraint, regarded in the view already stated— that is, as being " for the protection of the party contracting for it, and thereby preventing the greater injury which would result to the public if parties could not, with safety to a purchaser, transfer an interest in a trade or business." *Rannie* v. *Irvine*, 7 M. & G. 979, note *a*.

The recent cases show that really the only question, as to the reasonableness of the restraint, is one of public policy. In the case of *Green* v. *Price*, 13 M. & W. 697, counsel referred to *Mitchell* v. *Reynolds*, as showing the necessity of a

reasonable consideration, and was interrupted by Parke, B., who said: "All that doctrine about the adequacy of the consideration has been upset by *Hitchcock* v. *Coker*. The true question is, whether the contract is injurious to the public or not. If it be, it is void; if it be not, the parties may contract for what consideration they please." In the thoroughly considered case of *Mallan* v. *May*, 11 M. & W. 653, 665, it is said, that "the test appears to be whether it be prejudicial or not to the public interest, for it is on grounds of public policy alone that these contracts are supported or avoided. Contracts for the partial restraint of trade are upheld, not because they are advantageous to the individual with whom the contract is made, and a sacrifice *pro tanto* of the rights of the community, but because it is for the benefit of the public at large that they should be enforced." The court proceed to say that many of these contracts are entirely consistent with public interest, and to enumerate several instances—all of them where a trade is to be carried on—and conclude the general remarks by saying that the question is whether the limits assigned "are unreasonable," and by quoting the test laid down in *Horner* v. *Graves*, in reference to the protection of the party and the interests of the public.

From this consideration of the cases, as to the nature and extent of the restraint of trade which the law permits, it is obvious to my mind, that those cases have been decided, and are, therefore, to be understood, so far as the interest of the party contracting for the restraint was involved in the inquiry, as referring to an interest in carrying on a trade or business in some way connected with the restraint, and not to an interest connected merely with the use and occupation of real estate. I have not been able to find a case where the interest of the party contracting for a restraint of trade, being in the use and occupation of real estate, and disconnected from any interest in carrying on the trade, a question as to the nature and extent of the restraint has been made.

Coming directly to the case of an interest in real estate, what rule of law or public policy governs contracts as to the

use of man's own property, or that of his neighbor, for the carrying on of any trade or business? In such a case another important principle enters into the consideration. If it be the policy of the law that trade should be free, so it is the policy of the law that a man's freehold shall be his own to use or not, as he pleases. This principle—and upon this very point—is recognized in the case of *Mitchell* v. *Reynolds*, so often cited, in which it is said: "A man may voluntarily, and by his own act, put himself out of the possession of his freehold, he may sell it or give it away, at his pleasure;" and, again, "a man may, by his own consent, for a valuable consideration, part with his liberty," meaning by liberty, the free use of his land; for the instance given is: "as in the case of a covenant, not to erect a mill upon his own lands." 1 P. Wms. 189.

Numerous cases are found, in the reports, of covenants not to carry on upon land leased, and also upon lands sold, what are termed annoying trades, and which would be likely to affect the value of the premises leased, or of other land retained by a vendor. The entire legality of such covenants has never been doubted. Precisely the same principle would apply to a contract by the owner of one lot of land as to the use of an adjacent lot. Now, in such covenants, has any distinction ever been made as to the nature and character of the trade or business, between one which would be regarded as a nuisance and one which would not? A reference to some of the cases will show that no such distinction has ever been made, but covenants have been enforced, which prohibited, generally, the carrying on of any trade, and, specifically, trades which have never been regarded as nuisances, but as useful and necessary trades. In one case, under a covenant not to carry on "any trade, business or calling," it was held that a girl's school was embraced, and an injunction against its being carried on was granted. *Kemp* v. *Sober*, 1 Simons, N. S. 517. Under the same covenant a boy's school had before been held to be prohibited. *Doe* v. *Keeling*, 1 M. & S. 95. A covenant against erecting on a piece of land *any house* except a private house or orna-

mental cottage, has been enforced, and an injunction granted against erecting a beer-shop and brewery. *Mann* v. *Stephens*, 15 Simons, 376. The case of *Schreiber* v. *Creed*, 10 Simons, 9, 13, 36, is an instance of a covenant not to carry on *any manufactory*. Covenants directed against certain trades that are usually regarded as annoyances, though not strictly nuisances, are quite usual. An instance of such a covenant is in the case of *Barrow* v. *Richard*, 8 Paige, 351–361, which may be consulted as containing a *highly colored* description of the annoyance of a coal yard.

There would be no occasion for any such covenants as to any business, in itself a nuisance to an individual. Against such the law, without any covenant, would afford protection. This shows that it is not necessary, in enforcing a covenant against a particular trade, being carried on upon a particular lot or piece of land, to establish that character of damage which would be required in the case of a nuisance. As was said in the case of *Kemp* v. *Sober*, " a person who stipulates that her neighbor shall not keep a school, stipulates that she shall be relieved from all anxiety arising from a school being kept, and the feeling of anxiety is damage." 1 Simons N. S. 520.

Both upon reason and authority, I feel justified in coming to the conclusion that the contract in this case was valid. That its object, really, was not a restraint of trade, the limited extent to which the trade or business would have been restrained, by a compliance with the contract, being merely incidental. The agreement of the parties, therefore, will be entitled to that presumption of validity, which the law, generally at least, extends to all contracts, and, indeed, to all transactions; 8 Exch. 400; 9 Cl. & Fin. 109; 6 Dana, 369; and the rule which requires a statement of circumstances has no application.

It can not be, with any propriety, contended that there was not a sufficient consideration.

The dismission of a suit brought for the recovery of a claim prosecuted in good faith, and not upon a mere pretense and for oppression, is a good and valid consideration.

The agreement says that one party alleged there was a nuisance, which the other party did not admit, but disputed; giving due faith and credit to each, and there was a case of doubt, and that, being acted on by the dismission of the action, is sufficient to sustain the agreement. The authorities on this point are clear. 5 Peters, 114; 19 Barb. 302; 13 Ill. 140; 1 Atk. 10–12; 21 Eng. L. and E. 202.

The plaintiff being entitled to sustain his action, the points of the defense are next to be considered. There are two which have really been disposed of by what has been stated; first, the denial that there ever was a nuisance, and, secondly, that, if there were, it has been removed by a change or modification of the business carried on upon the premises. If there was a valid agreement for a compromise, it looks like mockery to require the plaintiff to try now the very question and matter which was settled then. So if there be a valid agreement, it requires the discontinuance of the business, and not its modification. If it be binding to its full extent when made, its signification can not be varied by any subsequent occurrence. *Elves* v. *Crofts*, 70 E. C. L. 241–260; 1 Cl. & Fin. 72–106. Upon the same principle, the objection that the plaintiff has ceased to own or occupy the premises for the benefit of which the agreement was made, can not be sustained. In truth, this may have been the result of a breach of the contract; a part of the damage of the plaintiff may have been in the diminished value of his property when compelled to sell. *Pemberton* v. *Vaughan*, 59 E. C. L. 87–89.

There is only one matter which remains to be considered, and that is the question of damages.

The recovery, in this case, was for the stipulated amount. Is it such a case as permits such a recovery? I understand the contract in this case to be personal. It does not affect, and was not intended to affect, the legal title and right of enjoyment which each party had in his real estate. The tenements were not made respectively dominant and servient. Indeed, no right to create or annex such an incident, even if attempted, would probably be recognized. It is not

of the class which the law permits to " inhere in the land." *Keppell* v. *Bailey*, 2 My. & Keen, 517.

The agreement being personal, it is quite obvious that the damages which would result from its breach, must have been regarded as uncertain by the parties, and will be so regarded by the law. This satisfies one requisition to constitute a case for liquidated damages. 6 Bing. 141; 19 E. C. L. 34, *Kemble* v. *Farren*. There must be a specified breach to which the damages are applicable. 3 Ohio St. 241, *Berry* v. *Wisdom;* 16 M. & W. 346, *Price* v. *Green;* 59 E. C. L. 89, cases cited. This test is fully satisfied by the circumstances in this case.

While, therefore, parties can not, by any particular phraseology, turn what is properly a penalty, into " liquidated damages," 5 Cowen, 150, or make a case of " liquidated damages," by simply using that expression, 16 M. & W. 354, when no rule of law is violated, " it is most important that parties making a contract should regulate the terms for themselves, and that courts of law should decide upon the terms which it appears to have been the intention of the contracting parties to agree upon." *Gott* v. *Gandy*, 2 E. & B., 75—E. C. L. 845–848. The circumstance that a contract may be hard and oppressive,⁻ may properly induce greater care in the ascertainment of the rule of law, but in the application of the rule, when ascertained, must be wholly disregarded.

I feel bound to say that the judgment ought to be affirmed. Judgment affirmed.