## WHEELER *v.* RYON.

AGENCY ; EVIDENCE ; PROOF NECESSARY TO SUPPORT BILL IN EQUITY.

1. All profits directly or indirectly made by an agent in the course of or in connection with his employment, belong absolutely to his principal, who may require of the agent an account thereof ; but to entitle the principal to the benefit of this rule, the profits must have been made by the agent in the course of his employment *as agent* and without the consent of his principal.

2. When the facts charged in a bill in equity as the ground for the relief sought, are clearly and positively denied by the answer and have been proved only by a single witness, the court will not grant a decree against the defendant.

No. 53.   Submitted June 12, 1893.—Decided September 5, 1893.

HEARING on appeal by the complainants from a decree of the Supreme Court of the District of Columbia, holding an equity term, dismissing bill.   *Affirmed.*

THE COURT in its opinion stated the case as follows :

The appellants filed their bill against Ryon and Tracy, real estate agents, the German-American Building Association No. 6, William Witthaft, president of that association, and William H. Henning, the object of the bill being, according to the prayer thereof, to have certain shares of stock in the building association, which had been cancelled, restored, and to obtain an account from the defendants, Ryon and Tracy, and other appropriate relief.   They also ask for discovery from Ryon and Tracy.

The bill was demurred to by all the defendants except Henning, but the demurrer was sustained only as to the Building Association and Witthaft, and overruled as to Ryon and Tracy, and there has been no appeal from the order sustaining the demurrer as to the Building Association and its president.   The other defendants answered the bill.

It appears from the allegations and the proof elicited by the answers to the interrogatories propounded by the plaintiffs to the defendants Ryon and Tracy, that the latter, as real estate agents, sold for the plaintiffs, or rather for Mrs. Wheeler, a certain piece or parcel of real estate in the city of

Washington, for the sum of $3,500; the purchasers, Watt and Fowler, agreeing to pay in cash $500, and the residue in monthly payments of $50. These terms, however, were not satisfactory to the plaintiffs, inasmuch as the cash payment was not large enough to meet their then existing wants. To meet this requirement, and to avoid defeating the sale, it was arranged that the plaintiffs should procure a loan from the building association; and this was effected. But in order to secure this loan, it was necessary to buy shares in the association; and accordingly, twelve shares of stock of the association were purchased in the name of Mrs. Wheeler, for which was paid the sum of $118, and upon which shares a loan of $1,968 was procured and paid over to the plaintiffs, and which loan was secured by a deed of trust or mortgage on the property sold, and the bond of Mrs. Wheeler. Mrs. Wheeler having conveyed the property to the purchasers, took from them a second mortgage or lien on the property for $1,178, and for which amount Watt and Fowler gave their notes payable in successive monthly instalments of $25. This done, the arrangement stood thus: The sum of $1,968, borrowed of the association and for which the property was pledged; the sum of $1,178, the amount of the second lien or charge on the property; and the $500, the cash payment, making the sum total of $3,646; the additional $146 to the $3,500, being the $118 paid on the stock, and $28 on account of some other matter included. Watt and Fowler, the purchasers, assumed liability for the $1,968, the loan by the building association, and agreed to pay $24 per month to the association—$12 on the shares of stock and $12 on the loan —and $25 per month on the lien held by Mrs. Wheeler for the balance of the purchase money, secured by the mortgage for $1,178. Watt and Fowler paid the building association the monthly amounts, according to agreement, to February, 1889, and also the monthly payments on the lien in favor of Mrs. Wheeler. At this latter date there had been paid on account of the stock $516, to be applied as before stated, and to which sum there was added the premium of $4.25 per

share on the stock, shown to have been the saleable value, making the total value of the stock $567, and after deducting this amount from the loan of $1,968, there was then left due to the association the sum of $1,401. This was the state of the account at this date with the building association, according to the testimony of the treasurer of the association. Before this time, according to the facts disclosed in the evidence, the plaintiffs had sold the notes remaining unpaid of Watt and Fowler, amounting to $425, at a discount of $25, to Tracy, of the firm of Ryon & Tracy. Subsequent to this sale of the notes, according to the evidence, Ryon & Tracy, as real estate agents, had been authorized by Watt and Fowler to sell the property purchased by them of the plaintiffs; and in February, 1889, they effected a sale thereof to Mrs. Martin, resulting, however, in a sale to themselves; and upon making this sale it became necessary to settle with the building association, and to get the property released from the lien held by that corporation. This was effected by the payment of the balance due the association, by Ryon and Tracy, and having the property released from the mortgage or deed of trust. They paid the association $1,401, the balance due, after deducting the full value of the stock, and thereupon the association cancelled the shares of stock; and Tracy, the owner and holder of the notes purchased by him, released the mortgage or deed of trust upon the property given for their security. There is no claim or pretense on the part of the plaintiffs that they ever paid any of the monthly dues or instalments on the stock of the building association, and therefore there was no obligation on the part of the association to keep the stock alive for their benefit. The payments made upon the stock were for the enhancement of its value as security for the loan and not for the benefit of the plaintiffs, who paid nothing thereon.

*Mr. A. A. Birney* for the appellants:

1. The complainants insist that this court should rectify the gross breach of faith on the part of the defendants, Ryon

and Tracy, in cancelling the stock held by one of the plaintiffs in the building association, and thus obtaining a pecuniary benefit by fraud in this matter. At the time of its illegal cancellation, as is shown upon the demand and to the benefit of Ryon and Tracy, this stock had acquired an increased value of $650 (exactly the amount they had discounted from the amount paid by Watt and Fowler to enhance the value thereof), whilst it had always stood in the name of the plaintiff on the books of the association named, and almost the same in amount as the difference between the amount actually advanced by said association and the face value of said stock. Had these predatory real estate agents given credit to Watt and Fowler for this amount, the plaintiffs might not have had so much reason to complain, except for the surreptitious and fraudulent manner in which the stock was cancelled, for Ryon and Tracy could have shown that they had dealt in good faith with one of the three parties to the transaction, at least; but it must appear that whilst acting in a confidential relation to all the parties, these defendants, Ryon and Tracy, told Watt and Fowler that the amount discounted belonged to the plaintiffs herein, whilst to the plaintiffs they say: "It is none of your concern"; and so their revenues, by this fraud, are increased to the amount of six hundred and fifty dollars.

2. In this jurisdiction the courts have always computed the value of stocks in a building association and sustained it as a commercial transaction between the parties, giving credit to the holders of shares always. See the following authorities: *Burns* v. *Building Association*, 2 Mack., 7; S. C., 3 Mack., 333; *Hilton* v. *Building Association*, 1 Mack., 107; *Mulloy* v. *same*, 2 McA., 594; *Forsyth* v. *same*, 1 Mack., 205; *Pabst* v. *same*, Id., 385; *Morrow* v. *James*, 3 Mack., 27. Again, as to stock in this case, it never was taken out of the name of the plaintiffs, and payment thereon was secured by two valuable pieces of property—the second piece being in value five times as much as that mentioned herein. On a bill by the owner of stock to compel its retransfer

from one who had obtained control of the books of the bank and made a fraudulent transfer, the corporation itself is a necessary party. *Kendig* v. *Dean*, 97 U. S., 423. The directors or trustees of a company are incompetent to release an original subscriber to its capital stock, or to make any arrangement with him by which the company, as creditors or the State shall lose all the benefit of his subscription. *Putnam* v. *New Albany R. R. Co.*, 16 Wall., 390; *Upton* v. *Tribolock*, 91 U. S., 45. A stockholder of a corporation who has paid for his shares is entitled to certificates for them. If the corporation or its officers have otherwise disposed of them, the corporation is liable for the conversion; but the stockholder has no ·personal claim on its treasurer for the shares. *Loving* v. *Frue*, 104 U. S., 223. The name of a person appearing on the stock book of a corporation as a stockholder, or a receipt given for the dividend upon the shares standing upon the book of the company in his name, is evidence of his being a stockholder. *Turnbull* v. *Payson*, 95 U. S., 418. Delivery of a stock certificate is not necessary. *Hawley* v. *Upton*, 102 U. S., 314.

*Mr. Ferdinand Schmidt* for the German-American Building Association, appellee, and *Mr. J. J. Johnson* for William H. Henning, appellee, filed no briefs.

*Mr. Henry E. Davis* for the appellees Ryon and Tracy:

The case argues itself. It is one of those cases in which "statement is argument and inference seems demonstration." The case is wholly one of fact. The complainants gave and got what they bargained for; and the transaction ·as to the notes was most simple and made between intelligent parties *sui juris*. The fact that the notes had various terms to run made a consideration for any "discount" from their face value at the time of their purchase.

The CHIEF JUSTICE delivered the opinion of the Court.

If all that was done by the defendants, Ryon and Tracy, was done *bona fide*, as they allege it to have been, without

any misrepresentation or deception of any kind, and with full knowledge on the part of the plaintiffs, there could be no ground for the relief sought. But it is charged in the bill that the stock in the building association was procured to be cancelled by Ryon and Tracy fraudulently and without any color of authority; that the notes for the unpaid balance of purchase money due from Watt and Fowler were purchased upon false pretenses and misrepresentations as to the real value of the notes and the true purchaser thereof; and that the release of the lien therefor was fraudulent and without authority; and that the whole transaction was so managed and contrived by Ryon and Tracy that they were enabled to, and in fact did, purchase the property through and in the name of another, and procured the release thereof from the liens, and thereby made large profit and gain, to the detriment and loss of the plaintiffs.

It may be laid down, as an unqualified rule, that all profits directly or indirectly made by an agent in the course of, or in connection with, his employment, without the sanction of the principal, belong absolutely to the principal, and he may require an account therefor. *Massey* v. *Davies*, 2 Ves. Jr., 318, 320; *Morison* v. *Thompson*, L. R., 9 Q. B., 480. But to entitle the principal to the benefit of this rule, it is essential that the profits should be made by the agent in the course of his employment *as agent*, and without the consent of the principal. And it would appear to be equally well settled, that whenever a fiduciary relation exists between the principal and agent, the latter may be called upon to account in a court of equity, especially in connection with other relief prayed, or where there is an element of fraud involved, and that reciprocity of accounts between the parties is not essential to relief in such case. *Mackensie* v. *Johnston*, 4 Madd., 373; *Makepeace* v. *Rogers*, 34 L. J., (N. S.), Ch. 367, 396.

Here, the only material proof offered by the plaintiffs in support of the allegations of the bill is found in the testimony of Mr. Wheeler, one of the plaintiffs, who acted in the business for his wife, and his testimony does not in all particulars

support the allegations of the bill. The defendants, Ryon and Tracy, are called upon to answer the bill, and special interrogatories appended, under oath, and they were also examined as witnesses in their own behalf; and in their answers, which appear to be full, they deny all charges of fraud and alleged misrepresentations, and deny most of the material facts alleged and proved on the part of the plaintiffs, both as to the purchase and cancellation of the stock, and the sale and purchase of the notes. And there is no ground shown for account for profits, for whatever profits were made in the purchase of the property from Watt and Fowler, or Mrs. Martin, were not made in the course of the agency for the plaintiffs. In fact, the defendants swear away all the substantial ground for relief; and they are, to a certain extent, supported in their statements by the testimony of the treasurer of the building association. In such state of case, the familiar and well settled rule applies, that in a bill praying relief, when the facts charged in the bill as the ground for obtaining the decree are clearly and positively denied by the answer, and proved only by a single witness, the court will not decree against the defendant. *Union Bank of Georgetown* v. *Geary*, 5 Pet., 99, 111. As the case is presented on the record before us, we cannot do otherwise than affirm the decree dismissing the bill, with costs to the defendants.

*Decree affirmed, with costs to the defendants.*