## JAMES BRADY

*v.*

## ATLANTIC CITY et al.

1. A stockholder of a water company who stands by while the inhabitants of the city, which is supplied with water by his company, call and hold an election to authorize the common council to purchase .the plant of the company, and also while negotiations for such purpose are carried on for more than two years, during which time proceedings for condemnation of said plant are taken and carried through to judgment without objection by him, will be held guilty of laches in equity in the absence of fraud.

2. In the exercise of the right of eminent domain, the moving party may withdraw therefrom at any time before final judgment, but a resolution directing an attorney to ask leave of the court to withdraw is not conclusive until the court has acted upon the application.

3. Private corporations organized and establishing plants for the purpose of supplying a city with water, are subject, under the statute, to the exercise of the right or power of eminent domain, and cities in which they are located may, in case of failure to agree upon the consideration to be paid therefor, proceed to condemn such plants for the purpose of supplying the city with water.

4. No fraud appearing, and the legislature conferring the right to a water company to sell and convey, and, in case of failure to agree, also conferring the right upon the city to condemn such proceedings of condemnation confirmed by a legal tribunal, cannot be annulled by a court of chancery at the instance of a stockholder.

5. This court does not review judgments at law on the ground of irregularity.

On order to show cause &c.

*Mr. George A. Bourgeois,* for the complainant.

*Mr. Allen B. Endicott* and *Mr. Joseph Coult,* for the city.

*Mr. David J. Pancoast,* for the water company.

,BIRD, V. C.

The complainant in this case is a stock and bondholder of the Atlantic Water Company. This company was formed by the

consolidation and merger of the Atlantic Water Company and the Consumers' Water Company. These companies were located in Atlantic City. Before the consolidation the city endeavored to negotiate with them for the purchase of their plants. It failed in this endeavor. Afterwards the consolidation and merger took place. Failing to negotiate a purchase, the city proceeded, under the statute, to condemn the rights, privileges and franchises of the Atlantic Water Company. The commissioners awarded to the company $843,564. Certain steps were taken, as will hereafter appear, to have the matter appealed, which were ineffectual. The city being about to withdraw and abandon the proceedings, the Atlantic Water Company expressed a desire to compromise, and a compromise was effected reducing the award to $771,782, for which amount the circuit court proceeded to confirm the award. It is this judgment or award which the complainant, as stock and bondholder of the Atlantic Water Company, asks this court in effect to declare null and void. I will proceed to state somewhat more in detail the facts upon which the prayer rests.

On the 20th day of June, 1892, the common council of the city of Atlantic City passed a resolution providing for the holding of a special election to adopt the provisions of the law entitled "An act to enable cities to supply the inhabitants thereof with pure and wholesome water," approved April 21st, 1876, and on the 30th day of June in the same year an election was held and the provisions of the said law accepted and adopted. After this act of acceptance by the city both the said Atlantic City Water Company and the said Consumers' Water Company offered to sell their plants to the city, the former for $500,000 and the latter for $200,000, as above stated. On the 3d day of October, in the same year, the common council of said city passed an ordinance whereby it agreed to accept the offer as made by the said Consumers' company, providing for the payment of the consideration expressed, and on the 19th day of December following the common council passed a similar resolution accepting the offer made by the Atlantic City Water Company, and providing for the payment of the consideration

expressed upon the said company's executing and delivering a good and sufficient deed of conveyance in the law for all their rights, privileges and franchises.

For certain reasons the supreme court, upon *certiorari,* declared these ordinances to be void.

On the 5th day of February, 1894, these water companies consolidated and merged their interests under the name of Atlantic Water Company.

On the 16th day of April, 1894, the city, having overcome the legal objections, passed an ordinance providing for the purchase of the plant of the Atlantic City Water Works Company and for the payment of the consideration, and on the same day a similar ordinance providing for the purchase of the Consumers' Water Company and for the payment of the consideration. On the 28th day of May following, the city informed the said water companies that it was ready to carry into effect the proposed contract made with the said companies, and that on failure to consent to carry out the said contracts, it would consider that the said companies abandoned and refused to enter into any agreements with the city to sell their said plants, and upon such failure the city would proceed to condemn the said plants in accordance with the act of April 21st, 1876.

The bill then shows that the Atlantic Water Company refused to carry out the agreement of the said Atlantic City Water Company and the said Consumers' Water Company, and declared that it refused to sell.

Upon due application made for that purpose to the circuit court three commissioners were appointed to appraise the value of the said plant of the said Atlantic Water Company. On the 7th day of December following, the commissioners made their award, in and by which they fixed the value of the plant of the said Atlantic Water Company at the sum of $843,564. Atlantic City being dissatisfied, applied to the judge who appointed the said commissioners, for a trial by jury, which application was rejected. The bill then alleges

"that the said city of Atlantic City and the board of directors of the Atlantic Water Company, or a committee or committees thereof, entered into some sort

of arrangement whereby an understanding was had that the said award should be reduced to the sum of $771,782, and that afterwards, to wit, on the 27th day of April, in the year 1895, on the application as aforesaid of the said city and water company, the judge of the circuit court aforesaid reduced the said award from $843,564 to the compromise sum of $771,782, and did then and there confirm the said award so reduced, changed and compromised as aforesaid."

The bill then alleges that the

"authority to change, reduce and compromise the award aforesaid, on the part of the said Atlantic Water Company, was a resolution of the board of directors of the said company, passed at a special meeting on the 24th day of April;"

and

"that the said resolution was passed by the board of directors aforesaid without the consent or approbation of the stockholders of the said company;"

and that the said stockholders never consented or approved of the action of the said board of directors in that behalf; and that the said complainant never has and does not consent to the sale of the said plant to the said city.

The complainant alleges that he has been defrauded and that the attempt to transfer the title of the said Atlantic Water Company to the said city was a

"scheme entirely foreign to the objects and purposes of the said Atlantic Water Company and beyond the powers of the board of directors thereof, and against the best interests of the stockholders, and if consummated will result in irreparable injury to your orator and the other stockholders of the said company."

The prayer is

"that the said Atlantic City may be enjoined from entering or taking possession of the plant, property, privileges and franchises of the said Atlantic Water Company, or the rents, issues or profits thereof, and that the said Atlantic Water Company may be enjoined from conveying or transferring its plant, property, privileges and franchises, or the rents, issues or profits thereof to the said city of Atlantic City; and that the award aforesaid, so changed, compromised and reduced as aforesaid may be decreed to have been fraudulently obtained as against your orator and other stockholders of the said Atlantic Water Company."

It thus appears that the complainant alleges that if the court does not interfere and prevent the transfer of this plant to the city he will be defrauded and will suffer irreparable injury, and that the attempted sale or transfer of the title of the plant to the city is entirely foreign to the objects or purposes for which the water company was formed.

There is nothing in the bill or affidavits which gives the slightest color to the charge of fraud, that is, there is not a single fact presented which exhibits the slightest effort at circumvention or deceit. Legal fraud is sometimes spoken of when the act complained of is contrary to law, to characterize a wrong. Whether the act complained of in this case is illegal seems to be the inquiry.

Besides the charge of fraud, which I will dismiss without further attention, it is urged that the directors of the Atlantic Water Company had no right or authority to make sale of or to transfer the plant. It is important to observe in the first place that the complainant never manifested any interest in this controversy until after the confirmation of the report of the commissioners appointed to appraise the value and assess the damages, as such report was compromised on the —— day of April, 1895, almost three years after negotiations were first begun between the water companies and the city for the sale and purchase of these water privileges by the city, and after the city had an opportunity of expressing its desire at the ballot-box. During all these months he allowed these negotiations to be carried forward, the appointment of commissioners upon the application of the city, their report to be made, the water company to express in a formal way its willingness to dispose of the plant at a price below that awarded by the commissioners, without having made any objection upon the ground of *ultra vires* until after all the steps had been taken except that of formal conveyance by the water company to the city. During all this time these parties were dealing with the interests of the complainant. During all this time he stood by, allowing these negotiations to be carried on at very great expense without protesting that they were without warrant or declaring that he would not be bound. That he

Brady v. Atlantic City.

has been guilty of laches, and in consequence thereof, under the circumstances of this case, should be estopped, has been urged with great force, and I must confess with very great propriety. *Rabe* v. *Dunlap, 6 Dick. Ch. Rep. 40.*

He knew from the beginning the efforts which the city was making to purchase and the desire upon the part of his company to sell. He knew of the negotiations and of the agreement on the part of his company to sell. He knew of the condemnation proceedings and of their confirmation by the court. He looked on contentedly until Stroud had exhausted his efforts and failed.

But I am wholly unable to come to the conclusion that the conduct of the board of directors of the water company was *ultra vires.* There is direct legislative authority for their action. The act of the legislature entitled "An act to enable cities to supply the inhabitants thereof with pure and wholesome water," approved April 21st, 1876 (*Rev. p. 720 § 1*), provides:

"That cities may take and convey from such source or sources as may be practicable, into and through said city such quantity of pure and wholesome water as may be required for domestic and other purposes by the inhabitants residing within the corporate limits of said city, and to this end the said city is hereby authorized and empowered in the corporate name of said city to purchase of any water company owning water works within said city, which said company is hereby authorized to sell and convey, all the real estate, personal property and works, and all the corporate rights, powers, franchises and privileges of said company, for such sum as may be mutually agreed upon by and between the said city and the said water company; and upon the due execution of a conveyance therefor, the said real estate, personal property and works and corporate rights, powers, franchises and privileges, shall pass to and vest in the said city in as full and ample manner as the same now are or heretofore have been held and enjoyed by the said water company."

If I were governed by the allegations in the bill simply, the discussion might properly end here, since, as stated, the only two questions raised are those with respect to the fraud and the right or power of the water company to sell and convey, both of which, I think, should be determined against the complainant. But upon the argument it was insisted, upon the part of the

complainant, that the city having passed a resolution authorizing their solicitor and counsel to make application to the court, before which the proceedings for condemnation were still pending, for leave to discontinue said proceedings and to withdraw their application for condemnation, no further steps could be taken in the matter which would be binding or have any legal efficacy upon any of the parties thereto. It appears that counsel, in behalf of the city, made such application to the court, but before the matter was determined the counsel of the water company, at the instance of the company itself, proposed a compromise and offered to accept of one-half of the sum awarded by the commissioners in excess of the sum offered by the city to the water company, the former being $843,564, and the latter being $700,000, thus making the proposed compromise $771,782. This offer was accepted on behalf of the city. The fact was recited upon the record and approved by the court.

This was not a withdrawal from the proceedings. The prosecution of the cause was not discontinued. It was only an application to the court for leave to discontinue. To all intents and purposes, at the time of the application to discontinue and ever since until now, so far as the record shows, the proceedings were and are clothed with all the vitality that can possibly be given to any such. It was, indeed, admitted upon the argument that one Stroud, who, as a taxpayer, applied for a *certiorari* to the justice of the supreme court who appointed the commissioners, and who finally approved the award, as compromised by the parties, to bring up the proceedings for review. This shows that they were not discontinued by the city authorities. It was also admitted that the justice refused to allow the *certiorari*. This shows that the learned and experienced justice regarded the proceedings as regular and clothed with all the vitality essential to give them legal efficacy.

But if this reasoning were to fail, and it were to be decided that the city had, in effect, abandoned the proceedings, notwithstanding the legal formalities which afterwards characterized the proceedings and had the sanction of the judge of the circuit court, the complainant in this case cannot take advantage thereof.

Brady *v.* Atlantic City.

He likens this case to that of *O'Neill* v. *Freeholders of Hudson County, 12 Vr. 171.* In that case, O'Neill was the owner of the land which the freeholders took steps to condemn. The freeholders, being dissatisfied with the amount of the award, withdrew their application or discontinued proceedings. O'Neill brought suit for the amount of the award. The defence was that the proceedings had been discontinued. In this case, the only person who could bring suit for the recovery of the money awarded would be the Atlantic City Water Company, and the only person who could raise the question as to the legality of the proceedings is Atlantic City itself. Neither of these parties raises any such defence. On the contrary, they both insist upon the legality and perfection of the proceedings so as to completely bind the parties thereto to the specific performance of them.

How, then, shall the question as to the illegality of the condemnation proceedings, as confirmed by the judge of the circuit court, be answered when submitted to the chancellor, at the instance of a stockholder of the water company? In my judgment, no fraud appearing, and the legislature conferring the right to the water company to sell and convey, and, in case of failure to agree, also conferring the right upon the city to condemn, such proceedings of condemnation, so confirmed by a legal tribunal, cannot be subverted, abrogated or annulled by a court of chancery at the instance of a stockholder. This court cannot say that the circuit court had no jurisdiction, nor that the proceedings in that tribunal were irregular, nor because it had not jurisdiction or because the proceedings were irregular, there is consequently no judgment. It certainly would be very remarkable if this court had the power to review judgments pronounced in courts of law, upon the ground of irregularity. *Stout* v. *Slocum, 7 Dick. Ch. Rep. 89.*

So long as the judgment of the circuit court stands unreversed, the important questions which were present and decided in *Mabon* v. *Halstead, 10 Vr. 640,* and *O'Neill* v. *Freeholders of Hudson County, supra,* cannot be called in aid of the complainant in this case.

The bill speaks of the transaction between the water company

and the city as a compromise. Corporations have the right to compromise their controversies (*Ellerman* v. *Chicago Junction Railway Co., 4 Dick. Ch. Rep. 217, 250,* and many cases there cited ; *1 Cook Stock & Stockh. § 171; 2 Cook Stock & Stockh. § 750; Brice U. V. 609; 1 Beach Eq. Jur. § 43*) ; that they may form the basis of judgments or decrees (*1 Beach Eq. Jur. § 94*) ; that counsel may conclude parties (*2 Beach Eq. Jur. § 1007; In re Wharton, 48 Pa. St. 487; Union Bank* v. *Geary, 5 Pet. 99*).

But as I understand the argument of counsel for complainant, in case there be a failure on his part in all other respects, he had a right to protect his client under the authority of *Keen* v. *Johnson, 1 Stock. 401,* and *Black* v. *Delaware &c. Co., 9 C. E. Gr. 455,* and *Mills* v. *Central Railroad Co., 14 Stew. Eq. 1.* Those cases do not involve the right or power of the legislature to authorize a city to condemn the plant and franchises of a private corporation in the interests and for the benefit of the city. That the right of eminent domain exists in such cases as we are now considering, I think is not questioned.