(Drinker *v.* Byers.)

tion of the deeds, as would most likely have been done, had there been any understanding or agreement between the parties at that time, that the vendor was to be no longer bound by it.   It might perhaps therefore be reasonably inferred, that the vendee, having received this promise of indemnity but a few days before the deed of conveyance, relied upon both as his security; and was induced thereby to give his bonds and mortgage for the payment of the balance of the purchase money.   But what seems to confirm this inference, and put it beyond a doubt, is the conduct of *Henry Drinker*, the vendor subsequently, and as long as he continued to live, in employing and paying counsel for defending the suits which were brought afterwards against the vendee to recover the land, or a part of it, upon the same right against which he had given this promise of indemnity.   This can only be accounted for upon the principle, that he still considered himself bound to indemnify and defend the vendee, notwithstanding he had accepted of a deed of conveyance from him, without any such covenant.   It is a practical construction of what was the understanding and agreement of the parties, in regard to this matter, which seems to demonstrate the correctness of the determination of the cause in the court below.

Judgment affirmed,

───────

## O'KESON *against* BARCLAY.

The compromise of an action of slander, in which the words laid in the declaration were not actionable, is a good consideration for a note for the payment of money.

ERROR to the Special Court of *Mifflin* county.

*Nicholas O'Keson* brought an action of slander against *William Barclay*, and his counsel filed a declaration, in which the words, alleged to have been spoken, were not actionable at all.   When the suit had been pending for a time, the parties met and compromised it, by *Barclay* giving his note to *O'Keson* for one hundred dollars; it was upon this note that this suit was brought.   The ground of defence in the court below was, that, although the compromise of a doubtful claim, affecting the rights of parties, is always a good consideration, without regard to the question, of who might have the right side of the controversy; yet that is not this case; this was not the compromise of a doubtful claim, for there could have been no doubt about it, that the plaintiff, from his own showing, never

(O'Keson *v.* Barclay.)

could have recovered a farthing. The court being of this opinion so instructed the jury, who found a verdict accordingly.

*Hale* for plaintiff in error; and *Potter contra.*

Judgment reversed, and *venire de novo* awarded.

## ROAD *case.*

Neither the act of Assembly of 1809, nor that of 1815, authorises the appointment of reviewers, with power to vacate part of a road, which had never been opened and to lay out another in its stead.

CERTIORARI to the Quarter Sessions of *Northumberland* county.

At January sessions, 1828, a petition was presented to the court, setting forth "that the road from *Sunbury*, past the *Northumberland Bridge*, to the *Ferry* opposite *Danville*, was not laid on the best ground: and praying the court to appoint viewers to view, and if they see cause to re-lay said road, or to lay out a new road from the said *Ferry* opposite *Danville*, to the borough of *Sunbury*." The viewers, at April sessions, 1828, made a report of a road, which was confirmed. A part of the road thus laid out, which ran through *Grant's* farm, had never been opened. At April sessions, 1830, a petition was presented to the court, setting forth that the above mentioned road had been laid, and "a part of which had been opened: your petitioners are of opinion that the said road may be laid upon other and better ground, more advantageous to the public generally, and with less injury to private property. They, therefore, pray the court to appoint six disinterested persons as viewers, to re-view the said road; and should they deem it advisable, to vacate so much of the said road now laid out, as may be altered or supplied." There were but four of the signers to the first petition, who were not either dead or removed from the county, when the last petition was presented; and three of the four signed it.

The reviewers made a report at August sessions, 1830, vacating that part of the road which ran through *Grant's* farm, and which had never been opened. Exceptions were filed to this report, upon which the court below set it aside. This certiorari was then taken out by the petitioners for the review.

*Grier*, in support of the exception, argued that this proceeding