### TAYLOR GAS PRODUCER CO. v. WOOD.

(Circuit Court, E. D. Pennsylvania. January, 20, 1903.)

#### No. 30.

1. CORPORATIONS—CONTRACTS—IMPLIED RATIFICATION.

The board of directors of a corporation which had granted a license under a patent owned by the company, by which the licensee agreed to pay royalty on a minimum number of the patented articles per annum, adopted a resolution appointing a committee to consider amendments to the contract, and providing that the same should be held in abeyance, owing to the doubt as to the validity of the patent and the amount of infringement going on. It also provided that the contract should be modified as agreed upon between the committee and the licensee. The correspondence between the president of the company, as a member of the committee, and the licensee, warranted the submission to the jury of the question whether a modification of the contract with respect to royalties was agreed on. *Held*, that a ratification of such modification by the directors, which would be binding upon the company, might be implied from their subsequent course of conduct, although no formal ratification was made.

At Law. On motion for judgment non obstante veredicto.

Henry E. Everding and Alex. Simpson, Jr., for plaintiff.
Joseph C. Fraley, for defendant.

DALLAS, Circuit Judge. This action was brought upon an agreement in writing dated September 11, 1890, by and between the plaintiff and the defendant, whereby the defendant was licensed to make and vend gas producers or apparatus for making gas under several letters patent owned by the plaintiff. After prescribing the license fees to be paid upon the gas producers which should be actually manufactured, the agreement provided:

"Third. That furthermore, in consideration of the license aforesaid, the said Walter Wood, party hereto of the second part, hereby agrees to make

and sell, or cause or procure to be made and sold, to others, to be used after the third and during each subsequent year of this license and agreement, not less than one hundred gas producers, or apparatus for making gas, containing or embodying the inventions set forth or described and claimed in the said hereinbefore recited several letters patent, or account for and pay royalty to the said corporation, the Taylor Gas Producer Company, party hereto of the first part, in each and every year after third from the date of this license and agreement, a royalty or license fees on not less than one hundred gas producers, or apparatus for making gas, containing or embodying the inventions set forth or described and claimed in the hereinbefore recited several letters patent, or some of them, whether that number of gas producers, or apparatus for making gas, or not, has or have been made by the said Walter Wood, party hereto of the second part, or by his procurement or authority, during that year."

Under this clause of the contract the plaintiff claimed to recover the sum of $10,000, being $25 per producer upon 100 producers, for each of the years 1898, 1899, 1900, and 1901; and the defense, so far as now material, was that that clause had been abrogated or waived by subsequent agreement of the parties. It was—

"Agreed between counsel for plaintiff and defendant that if the court shall, upon a review of the entire evidence produced on the trial held November 13, 1902, be of opinion there is not sufficient evidence to submit to the jury the question as to whether or not the clause of the contract in suit relative to the minimum amount of royalties to be paid has been abrogated or waived by agreement of the parties, expressed or implied, that then the verdict, if for the defendant, is to be changed to a verdict for the plaintiff for the amount claimed, as if upon an instructed verdict to the jury to that effect, reserving to each party the right to an appeal or writ of error as to the correctness of the ruling of the court on this and all other points in the case. This stipulation is entered into in order to avoid difficulty on the question of practice which forbids a judgment for plaintiff non obstante veredicto despite a finding by the jury for the defendant."

Subject to this stipulation, the question therein stated was submitted to the jury, with instructions to which no objection has been made; and, a verdict for defendant having been rendered, the plaintiff, in accordance with the terms of the stipulation, has now moved for judgment in its favor non obstante veredicto.

Whether or not rule 22, if duly invoked, would have precluded the defense under consideration, need not be determined, for I am clearly of opinion that at this stage of the case that rule is not operative. The evidence relating to this defense was fully gone into at the trial, and was referred to the jury upon an agreed reservation only of the question of its sufficiency; and a verdict rendered under such circumstances should not, I think, be set aside and reversed merely because a notice which might have been, but was not, insisted upon before its rendition, had not been given.

The plaintiff more pertinently contends that there was no evidence to go to the jury in support of the defendant's claim that "the clause of the contract in suit relative to the minimum amount of royalty to be paid had been abrogated or waived by agreement of the parties, expressed or implied." But I cannot affirm this proposition. The fact is that the jury did find that such an agreement had been made, and that finding, I think, was by no means one which could not reasonably have been based upon the evidence. It is true that the minutes of the plaintiff corporation exhibit no resolution of its

board of directors, or of its stockholders, directly and in express terms making the agreement in question, but it does not necessarily follow that it was not in fact made, and in such manner as to bind the company. The court of appeals for this circuit, in Salem Iron Co. v. Lake Superior Consol. Iron Mines, 50 C. C. A. 216, 112 Fed. 241, said:

"Undoubtedly the board of directors is generally the governing and controlling body of a corporation. Its policy and conduct, within the scope of the purpose of its creation, is in the absolute control of such directors. It cannot incur obligations without the consent of such board, or generally without its express authority; but the board of directors can exercise its plenary power by delegating its authority as to certain transactions or classes of transactions to its president or other executive officers, as well as by direct authorization of a particular transaction by express resolution to that effect. A corporation is an intelligent, though artificial, person; and while its board of directors is its controlling mind, it may be bound, like a natural person, by a consent implied by law from a course of conduct permitted and recognized by its governing body."

These observations are pertinent to the present case. At a directors' meeting held April 29, 1895, the president reported the sales of producers for the year 1894 (a "year after third from the date of this license and agreement"), showing license fees due thereon, but with no mention of minimum royalty, and from these fees the report stated that:

"Mr. Wood asks a reduction of $410, so as to make the royalty conform to the royalty in force under the contract prior to October 3, 1893, in view of the uncertainty of the validity of the patent, and I now submit the same to the board for its action. * * * The question of the validity of the Taylor Producer patent is still unsettled, and considerable infringement is still going on."

Immediately following this report, the minutes record that:

"Messrs. E. B. Coxe, W. J. Taylor, and Walter Wood were appointed a committee for the prosecution of the parties infringing the patents owned or controlled by the company. This committee was also instructed to consider amendments to the contract with R. D. Wood & Co., the terms of which to be held in abeyance, owing to the doubt surrounding the patents, and to be modified as may be agreed upon subsequently between the committee and the licensees of the company under the said patents."

It seems, then, that at this meeting the attention of the board was distinctly directed to the fact that because the question as to the validity of the Taylor Producer patents was still unsettled, and considerable infringement was still going on, Mr. Wood asked a reduction of royalty to conform to the royalty in force under the contract prior to October 3, 1893, and that thereupon a committee was appointed, not only to consider amendments to the contract, but with power also to agree upon a modification thereof. That this action of the directors did not of itself amount to an agreement must be conceded, but it authorized the making of one, the consideration for which is quite apparent. The licensee supposed it to be the duty of his licensor to protect him against the competition of infringers, and, because this was not done, he claimed that the original contract should be changed. A question which both parties—the licensor as well as the licensee—conceived to be a serious one, was thus presented, and whether it was or was not actually a doubtful question

is unimportant, for, even if it were wholly free from doubt, its settlement would be a sufficient consideration to support a contract, made for that purpose. Bank v. Geary, 5 Pet. 114, 8 L. Ed. 60; O'Keson v. Barclay, 2 Pen. & W. 531.

It should not be overlooked that the board itself had agreed that, pending action by its committee, the terms of the original contract were "to be held in abeyance," and that some modification of it, the details of which the committee was to determine, would be made. But before anything was effected by the committee, one of its members (Mr. Eckley B. Coxe) died, and, his place not having been filled, it thereafter consisted of Mr. Taylor, the president of the company, and Mr. Wood himself. In the conversations and correspondence which ensued between these gentlemen, the former naturally spoke and wrote as representing the company; and the latter, quite as naturally, and not without warrant, assumed that he did represent it. I need not refer with particularity to what passed between them. It is sufficient to say that, while there was room for controversy as to whether they agreed upon an abrogation of the minimum clause of the contract, the evidence upon that question not only justified, but, in my opinion, required, its submission to the jury; and even if it were essential that such an agreement, when so made, should be subsequently ratified by the directors, their minutes disclose a course of conduct on their part from which, as it seems to me, such ratification may and ought to be implied. Salem Iron Co. v. Lake Superior Consol. Iron Mines, supra.

The plaintiff's *motion for judgment non obstante veredicto* is denied, and the clerk is directed to enter judgment for the defendant upon the verdict.