## I. L. Lyons Company *v.* Mahn, Appellant.

*Contract—Compromise—Consideration.*

A contract made in compromise and settlement of a disputed and doubtful claim is binding. The sufficiency of the consideration for a compromise is not to be determined by the soundness of the original claim of either party. The very object of compromise is to avoid the risk or trouble of that question; and where a settlement has all the substantial elements of a compromise it is immaterial that the claim was made and received not in a hostile, but in an amicable spirit.

In an action of assumpsit where it appears that the plaintiff purchased a very large number of cigars at a price designated, under an agreement on the part of the defendants that a skilled salesman should go to the city of defendant's place of business and assist in selling the cigars until all were sold, and it also appears that the defendant failed to perform this agreement, and that subsequently after much correspondence, the defendant agreed to allow plaintiff 5 per cent. of the price of all the cigars, in settlement of the loss sustained by defendant's default, such compromise is a valid contract based on sufficient consideration.

Argued Oct. 14, 1915. Appeal, No. 84, Oct. T., 1915, by defendants, from judgment of Municipal Court, Philadelphia Co., Nov. T., 1914, No. 487, for plaintiff on case tried by the court without a jury in suit of I. L. Lyons and Co., Ltd., v. Godfrey S. Mahn and George B. Mahn, trading as Godfrey S. Mahn Company. Before RICE, P. J., ORLADY, HEAD, PORTER, HENDERSON, KEPHART and TREXLER, JJ. Affirmed.

Assumpsit on a contract.

CRANE, J., filed the following opinion:

Plaintiff purchased from defendant through the latter's salesman, one R. H. MacArthur, 100,000 cigars, which cigars were delivered by defendant to the plaintiff and paid for in full. These facts are undisputed. It appears that in negotiating the order, defendants' agent agreed that he would remain with the plaintiff a suffi-

cient time until all the goods embraced in the order were distributed. In other words, MacArthur, as a specialty man, promised that he would facilitate the efforts to introduce the new line of merchandise, but when about 6 per cent. of the order was disposed of, he withdrew all assistance. A controversy arose between the parties hereto out of the breach of the part of said MacArthur (defendants' salesman) of the agreement made by him to remain with plaintiff until all of the goods were "placed." Exhibits "A" to "G," inclusive, attached to defendants' answer, were offered as evidence in the case without objection.

[A careful examination of the correspondence persuades us that the promise to allow the 5 per cent. commission or discount was predicated upon an understanding on defendants' part that plaintiff would employ an agent to complete the distribution of the cigars,] (2) and defendant undoubtedly contemplated that plaintiff's account was a desirable one and made the offer with the evident purpose in view of preserving the account for such future profits as might accrue thereby. However, the final adjustment is clearly set forth in defendants' letter under date of May 3, 1913, wherein they state, "We will allow you 5 per cent. on all goods you have purchased up to date." This offer was accepted as satisfactory by the plaintiff in their reply thereto under date of May 7, 1913. The commission being allowed on all goods purchased up to date, we fail to see upon what basis the defendants can interpret the language used by them, to cover any future purchases. Although reference may be found in the correspondence to the employment by the plaintiff of a salesman, even though we should assume that such salesman was employed by them (which does not appear in the testimony) this circumstance loses all significance in the absence of any definite, legal agreement covering future orders of cigars. [We are consequently of the opinion that although defendants offered the 5 per cent. commission as an inducement

480        I. L. LYONS CO. *v.* MAHN, Appellant.

Opinion of Court below—Opinion of the Court. [62 Pa. Superior Ct.

to the plaintiff to continue the account, the final agreement between the parties as clearly expressed in the last two communications referred to was that the commission would be allowed by defendant on all goods purchased by plaintiff up to May 3, 1913, and that the consideration for this agreement was one of business expediency, to wit: to obtain plaintiff's future business.] (3) The fact that defendants were disappointed in this expectation may be unfortunate for them, but as we view the record, [there was no concrete agreement that the salesman to be employed by plaintiff would sell any stipulated amount of goods or that the plaintiff would be obligated to buy from the defendants any definite quantity of cigars in consideration for the allowance of 5 per cent. commission.] (4) The court, therefore, finds in favor of the plaintiff in the sum of $207.62; judgment to be entered sec. reg.

*Error assigned* was the judgment of the court.

*Frank H. Warner,* with him *Arthur F. Schneider,* for appellants.

*Geo. P. Orr,* of *Conard, Middleton & Orr,* for appellee.

OPINION BY RICE, P. J., April 17, 1916:

The evidence in this case warranted these findings: that the plaintiff, a wholesale dealer in drugs and cigars at New Orleans, and a distributor of cigars among the druggists and cigar dealers of the South, purchased from the defendants, manufacturers of cigars at Philadelphia, 100,000 cigars at the price of $3,751.10, which were delivered and paid for in full; that in negotiating the sale, and as part of the inducement to purchase held out to and relied on by the plaintiff, McArthur, the defendant's salesman, agreed that if the plaintiff would make the purchase he, McArthur, would meet the goods on their arrival at New Orleans, would remain there

and, without expense to the plaintiff, assist the latter in selling the cigars, until all were sold; that in so undertaking McArthur was acting within the apparent scope of his authority as the agent of the defendants; and that he did not carry out this agreement but when only a small part of the cigars were disposed of left and rendered no further assistance.

A question was raised on the argument as to McArthur's authority to make the agreement, but no such question was raised in the course of the correspondence between the parties. On the contrary his authority was impliedly recognized. Thus, when the plaintiff notified the defendants of McArthur's default, and that it would have little chance of building a satisfactory business "without special work such as McArthur promised" the defendants replied: "We appreciate your position and are willing to do anything that is fair, and we feel assured that you do not want anything that is not so." Again, in a later letter from the plaintiff to the defendants the former stated with particularity what McArthur had promised, alleged his failure to carry out this promise, and called attention to the consequent injury, and concluded by saying "so that we feel that you should be willing to meet us half way and do something toward making good his contract." To this the defendants replied: "In regards to the goods Mr. McArthur failed to sell through his efforts, and as you know we are very anxious to have this account a success; we will allow you 5% on all goods you have purchased up to date. Of course we have more than paid this commission to Mr. McArthur, but there is no reason why you should stand for his neglect; therefore we will stand the loss." Construing these letters in conjunction they clearly imply an assertion by the plaintiff and an admission by the defendants of the breach of the contract, by reason of McArthur's default, and the defendants' consequent liability. But the damages were unliquidated and probably difficult of exact ascertainment. They could only

be settled by agreement or litigation, and as was said in
Brightly v. McAleer, 3 Pa. Superior Ct. 442, there is no
hard and fast rule of law which drove the parties to the
latter method.   True, where a legal obligation exists, a
cumulative promise to perform it, unless upon a new
consideration, is a nullity: Wimer v. Overseers of the
Poor, 104 Pa. 317; Erny v. Sauer, 234 Pa. 330.   But it
is also true that a contract made in compromise and set-
tlement of a disputed and doubtful claim is binding.
The sufficiency of the consideration for a compromise
is not to be determined by the soundness of the original
claim of either party.   The very object of compromise
is to avoid the risk or trouble of that question; and
where a settlement has all the substantial elements of a
compromise it is immaterial that the claim was made
and received not in a hostile, but in an amicable spirit:
Fink v. Farmers' Bank, 178 Pa. 154.   Such agreement
relies for its support not on a past consideration alone,
but on a present benefit: Brightly v. McAleer, supra.
Applying these principles the conclusions are reached:
that the acceptance by the plaintiff of the defendants
offer to pay the plaintiff 5% of the price of all the goods
embraced in the sale made by McArthur, in settlement
of the loss sustained by reason of his default, constituted
a contract which was supported by a good and valuable
consideration: that the validity of the contract was not
affected by the fact that the claim for redress out of
which it arose was not made until after the cigars were
paid for; and that the action upon such contract, which
this was, would not be defeated by proof that McArthur
exceeded his authority as agent in agreeing as part of
the original contract of sale to personally assist the
plaintiff in disposing of the cigars.

Bearing in mind that the action was founded on the
settlement agreement, the variance between the state-
ment and the proof as to the date of the oral contract
made through McArthur, which is declared on by way
of inducement, was not fatal.

478, (1916).]    Opinion of the Court.

The defendant set up as a counterclaim the amount of profits ($3,000.00) they would have made if the plaintiff had carried out its alleged agreement to employ a salesman to make future sales of cigars which would amount to $60,000.00 and for which the plaintiff was to be allowed 5% commissions. It is true the correspondence shows that the parties discussed the employment of such salesman by the plaintiff and that the latter in its letter of May 7, 1913, said they would "at once begin to hunt for a good man." There is no satisfactory evidence that the plaintiff did not make immediate efforts to get the right sort of man. But apart from that, the learned trial judge was right in rejecting the counterclaim because, as stated in his memorandum opinion, "there was no concrete agreement that the salesman to be employed by plaintiff would sell any stipulated amount of goods or that the plaintiff would be obligated to buy from the defendants any definite quantity of cigars in consideration for the allowance of 5% commission."

The assignments are overruled and the judgment is affirmed.

The opinion in the above mentioned case was written by Judge RICE, to whom the case was duly assigned for that purpose during his term of office, and is now adopted as the opinion of the court.

BY THE COURT.