## CLARKE v. UNITED STATES.

Civ. A. No. 9754.

United States District Court
E. D. Pennsylvania.

Dec. 15, 1950.

MacCoy, Brittain, Evans & Lewis, Philadelphia, Pa., for the plaintiff.

Theron Lamar Caudle, Asst. Atty. Gen., Andrew D. Sharpe, F. A. Michels, Sp. Assts. to the Atty. Gen., Gerald A. Gleeson, U. S. Atty., Thomas J. Curtin, Asst. U. S. Atty., Philadelphia, Pa., for the defendant.

FOLLMER, District Judge.

This is an action brought for the refund ·of income taxes for the calendar year 1941. The facts were stipulated and as so stipulated are substantially as follows:

The plaintiff (then Rhoda R. Wagner and hereinafter called the "taxpayer") and the Provident Trust Company of Philadelphia, on August 31, 1939, became the executors of the will of Edward S. Wagner, a resident of Montgomery County, Pennsylvania, ·who died August 15, 1939.

During the course of the administration of the estate differences arose between the executors and the taxpayer in her individual capacity and as beneficiary under the will around the question as to whether, under the language of the will, the testator intended his residuary estate to bear all the Federal and Pennsylvania estate taxes payable by reason of his death, or whether the executors should require the taxpayer under the then comparatively recent Pennsylvania Apportionment Act of July 2, 1937, P.L. 2762, 20 P.S. § 844, to reimburse the estate for the amount of such taxes as were attributable to the inclusion in the gross estate of her interest in certain jointly held property.

The taxpayer (in her personal capacity) and the executors, for the purpose of settling those differences, entered into a written agreement dated May 26, 1941, which agreement was approved by the Orphans' Court of Montgomery County by decree entered June 2, 1941. The agreement recites that prior to the death of the decedent certain real estate was owned by him and the taxpayer as tenants by entireties and certain joint deposit accounts had been maintained by them and, upon his death, the taxpayer became the sole owner as surviving tenant by the entirety of such real estate and of the personal property consisting of the proceeds of the deposit accounts; that the real estate and personal property had been included in the decedent's gross estate for Federal estate tax and Pennsylvania additional estate tax purposes; and, whereas a question had arisen as to whether, under the provisions of the Act of July 2, 1937, P.L. 2762, 20 P.S. § 844, the executors could require the taxpayer to reimburse them for the portion of the Federal estate tax and the Pennsylvania additional state tax, which was attributable to the inclusion of the real estate and personal property in the decedent's gross estate; that the amount of taxes attributable to the inclusion of such property in the gross estate was approximately $84,000. The agreement also recites that on September 15, 1939, the executors received from the Scott Paper Company $37,491.60, representing a dividend at the rate of $.40 per

share upon 93,729 shares of the common stock of the company held by the executors; that under the will the taxpayer was entitled to the income from three-fourths of the residuary estate and Rhoda Wagner Richards, a daughter of the decedent, was entitled to the income from the remaining one-fourth thereof; and that the taxpayer and the daughter had claimed that the dividend of $37,491.60 should have been paid to them in the proper proportions as income from the estate instead of having been added to the principal as shown by the executors' account. The agreement further recites that the taxpayer is entitled to compensation for her services as co-executor in the amount of $48,116.12, calculated at the rate of one per centum upon the appraised value of the personal estate. Following those recitals the parties agreed as follows:

"1. The executors agree that the Federal estate tax and Pennsylvania additional estate tax applicable to the real estate and personal property to which the widow became entitled upon the death of her husband as aforesaid, amounting to $84,000, as nearly as can be determined, shall be borne by the estate and no claim for reimbursement or of any other nature shall be made against the widow therefor.

"2. The widow does hereby agree that she will not assert a claim for compensation for acting as co-executor of the said estate.

"3. The widow agrees that, to the extent of her interest in the dividend received by the executors upon shares of Scott Paper Company as above recited, such dividend shall be treated as principal and not as income, and she does hereby agree not to assert any claim for such dividend or any part thereof, and the widow further agrees that she will obtain the agreement of the said Rhoda Wagner Richards that such dividend, to the extent of her interest, shall be treated as principal and not as income, and that the said Rhoda Wagner Richards will not assert any claim for such dividend or any part thereof.

"4. This agreement has been entered into upon the express understanding that it shall be subject to the approval of the Orphans' Court of Montgomery County, Pennsylvania, and in the event of its not being so approved the rights and obligations of the parties shall be the same as though the agreement had not been entered into. In such event the widow, as well as the said Rhoda Wagner Richards, shall be entitled to present their respective claims as above mentioned either against the estate or against the trust created by the will of the decedent."

The taxpayer consistently reported her income, including that for the year 1941, upon a cash basis.

On March 16, 1942, the taxpayer filed her return for the year 1941 disclosing a tax liability of $25,480.14, which she paid on the date of filing.

The taxpayer did not include in the 1941 return, or in the return for any other year, any income representing commissions or compensation for acting as co-executor of the estate of Edward S. Wagner, deceased.

On June 10, 1944, the Commissioner of Internal Revenue notified the taxpayer of his determination of a deficiency in her income taxes for the year 1941 in the amount of $34,317.01, as the result of including in her gross income, in addition to all other items, the amount of $48,116.12, being one-third of the amount of $144,348.36 awarded as executors' commissions, of which deficiency $31,886.31 is attributable to the inclusion of the amount of $48,116.12.

The amount of $34,317.01, together with interest of $5,226.53, a total of $39,543.54, was assessed on September 29, 1944; and on November 4, 1944, the assessment, plus accrued interest of $197.72, a total of $39,741.26, was paid.

On November 1, 1946, the taxpayer filed with the Collector of Internal Revenue for the First Collection District of Pennsylvania a claim for the refund of income taxes for the year 1941 in the amount of $31,886.31, with interest at six per centum per annum. The claim was rejected August 19, 1947.

The taxpayer contends that she realized no income through the transaction here involved and therefore the sum of $48,116.12 was erroneously included in her gross in-

come for the purpose of computing her income tax for the calendar year 1941.

Defendant, on the other hand, contends that by applying her acknowledged right to the $48,116.12, as commissions, in consideration of a release of the claim against her amounting to approximately $84,000, she acknowledged the claim against her, at least to the extent of the amount owing to her, and that in so doing she used her commissions advantageously.

Section 22(a) of the Internal Revenue Code, 26 U.S.C.A. § 22(a), includes among "gross income" all "gains, profits, and income derived from salaries, wages, or compensation for personal service * * ; also from interest, rent, dividends, securities, * * * or gains or profits and income derived from any source whatever."

In commenting upon this Section of the Act, the Supreme Court in Helvering v. Clifford, 309 U.S. 331, at page 334, 60 S.Ct. 554 at page 556, 84 L.Ed. 788, said: "The broad sweep of this language indicates the purpose of Congress to use the full measure of its taxing power within those definable categories."

The deficiency of $34,317.01 in income taxes of the taxpayer for the year 1941, which she seeks to have refunded to her, is the result of the Commissioner having added to her reported income the amount of $48,116.12 which she was entitled to have received as compensation for her services as co-executor of her late husband's estate. In her claim for a refund the taxpayer asserted that she had waived her right to executor's commissions and that she never received from the estate any commission for her services as co-executor. On the other hand, in the agreement of May, 26, 1941, she agreed that in consideration of the executors agreeing not to make any claim against her for reimbursement for taxes paid out of the estate assets she would not assert a claim for compensation for acting as co-executor of the estate.

As above indicated, the taxes paid by the executors and which form the basis of this action, were on certain real estate and certain joint deposit accounts held by the decedent and taxpayer as tenants by entireties, all of which had been included in the decedent's gross estate for Federal estate tax and Pennsylvania additional estate tax purposes, although under the law of Pennsylvania, on the death of decedent, the taxpayer became the sole owner of the said real estate and proceeds of deposit accounts as surviving tenant by the entirety.

The taxpayer argues that no apportionment was made by the Orphans' Court as required by the Pennsylvania Apportionment Act; that there existed at the inception and during the course of the administration of the estate a reasonable doubt whether the taxpayer was liable under the Act to pay a proportionate share of the Federal and Pennsylvania estate taxes, and finally, no payment was made in cash to the taxpayer.

The pertinent portion of the will of the decedent is as follows: "Sixth: I will and direct that all estate tax, inheritance tax, succession tax, transfer tax, or any other tax in the nature of any thereof which may be chargeable upon my estate or any portion thereof, or upon any bequest, trust, benefaction or any interest in my estate or any part thereof *given or provided for by this my Will*, shall be paid out of my general estate, *so that all provisions or benefactions of every kind or nature given or made by this my Will* shall be free and clear of all taxes as aforesaid." (Emphasis supplied.)

The Pennsylvania Apportionment Act of July 2, 1937, P.L. 2762, 20 P.S. § 844, provides, inter alia, as follows:

"(a) * * * Such proration shall be made by the orphans' court * * *.

"(b) The orphans' court, upon making a determination as provided in subdivision (a) of this section, shall make a decree or order directing the executor, administrator or other fiduciary to charge the prorated amounts against the persons against whom the tax has been so prorated, * * *."

The taxpayer further argues that at the time of decedent's death in 1939 the applicability of the Pennsylvania Apportionment Act of 1937, in so far as it required

the interpretation of so-called "tax clauses" in wills, had not had appellate court consideration; that "the Executors were understandably uncertain whether they should demand of the plaintiff proration under the Act as an alternative to accepting the risk of assuming that the will clearly charged all taxes, including those on the jointly-held and any other extra-testamentary property, against the residuary estate;" that "there was consequently no more than the possibility of enforcing a demand upon the plaintiff so to contribute to the estate taxes;" and finally, that "the agreement of settlement and compromise, * * * in no way constituted an admission on her part of the existence of any established 'liability' for Federal estate tax."

In discussing the tax clause of the will (above quoted in full) the taxpayer places emphasis on the words "chargeable upon my estate." I feel that the emphasis should be placed on the words "given or provided for by this my Will," and "so that all provisions or benefactions of every kind or nature given or made by this my Will shall be free and clear of all taxes as aforesaid." It seems to me too clear for argument that in directing the payment of taxes out of his general estate he was only thinking of property passing by his will. The property held by the entireties did not become a part of his estate for distribution under his will, consequently it would have become the subject of tax proration under the Pennsylvania Apportionment Act.

In re Stadtfeld's Estate, 359 Pa. 147, at page 152 and 153, 58 A.2d 478, 481, in affirming a decree of apportionment of the Orphans' Court of Allegheny County, the court said: " * * * The act creates a *presumption* that a testator intends that proration should be made in accordance with its terms unless his will contains a specific provision, clearly expressed, inconsistent with such presumption, and, to accomplish that result, his language must not be of doubtful import: In re Harvey Estate, 350 Pa. 53, 56, 57, 38 A.2d 262, 263. Only in the 18th paragraph of Judge Stadtfeld's will is there any provision in regard to the payment of taxes; that paragraph provides: 'I direct that all inheritance, estate, succession or similar duties or taxes which shall become payable in respect to any property or interest passing under my will or any codicil which I may hereafter execute, shall be paid out of the principal of my estate, without diminution of any devises, bequests or legacies.' It would seem too clear for discussion that this provision is wholly silent with regard to estate taxes on property *not passing under the will* and therefore is not broad enough to cover property which, though not so passing, is subject to the federal estate tax because of its constituting part of the decedent's gross estate. * * * That a direction in a will which applies only to the payment of the taxes on the legacies and devises therein has no significance or effect in regard to the payment of the taxes on extra-testamentary property was held in our own recent case of In re Moreland Estate, 351 Pa. 623, 631, 632, 42 A.2d 63, 66, 67, and there are several decisions in New York to the same effect: Kaufman's Estate, 170 Misc. 436, 10 N.Y.S.2d 616, 620-622; Pennock's Estate, 172 Misc. 10, 14 N.Y.S.2d 131, 140, 141; Chase National Bank v. Tomagno, 172 Misc. 63, 14 N.Y.S.2d 759, 761; Ryan's Estate, 178 Misc. 1007, 36 N.Y.S.2d 1008, 1010, 1011, affirmed 265 App.Div. 1051, 41 N.Y.S.2d 196; Mills' Estate, 189 Misc. 136, 64 N.Y.S.2d 105, 108-112; affirmed 272 App.Div. 229, 70 N.Y.S.2d 746. * * *"

It seems to me to be utterly fantastic to think that this taxpayer simply as a good will gesture waived her undisputed right to her share of the executors' commissions amounting to $48,116.12. The fact remains that she handled this as a cold business proposition on a quid pro quo basis. It is true the matter of the payment of the taxes on the property held by entireties did become the subject of a controversy between the executors, of which she was one, and herself personally. The controversy was settled by the agreement in which her fees became the consideration for the promise of the executors not to press the claim on behalf of the estate for proration against her.

It is also true no decree of proration as such was entered by the Orphans' Court. However, the agreement was made contin-

548

gent upon the approval by the Orphans' Court and the Orphans' Court did give it its formal approval and that, it seems to me, is tantamount to a formal decree.

In Re Jones' Estate, 54 Pa. Dist. & Co. R. 364, 61 Montg. 289, the court held that the Apportionment Act does not create new substantive rights, it merely spells out those already existing and implements their enforcement by giving Orphans' Court jurisdiction over persons found liable to pay prorated portions.

The agreement specifically cited the impact of the Apportionment Act on the controversy in stating, "Whereas a question has arisen as to whether, under the provisions of the Act of July 2, 1937, P.L. 2762, the executors may require the widow to reimburse them for the portion of the Federal estate tax and the Pennsylvania additional estate tax which is attributable to the inclusion of such real estate and personal property in the decedent's gross estate." The only other heir, in addition to the taxpayer, gave her formal assent to the agreement and joined in the request that the court give it its approval. The Orphans' Court of Montgomery County in approving the agreement certainly was fully and completely informed of the facts and their relationship to the Apportionment Act.

The taxpayer's contentions that at the inception and during the course of the administration of the estate there existed a reasonable doubt whether the taxpayer was liable under the Pennsylvania Apportionment Act to pay a proportionate share of the Federal and Pennsylvania estate taxes, also that no payment in cash was made to the taxpayer, are, in my judgment, of no consequence.

When a taxpayer's obligations are assumed by another or reduced or cancelled as part of a business transaction, and the taxpayer is thereby enriched, taxable income will result.[1]

In Helvering v. Gordon, 8 Cir., 87 F.2d 663, at page 667, the court said: "* * * It is not essential under the income tax laws that a taxpayer actually receive money to which he is entitled before he is required to include it in his income tax returns. Whenever it is available to him and he is authorized to receive it or to direct its payment to some other party, it must be accounted for by him for income tax purposes. * * * If having power and control over it during the taxing period he voluntarily places it beyond his reach, he cannot be heard to say that he did not receive it within the period. * * *"

Of course, there is no income unless and until there has been a release of liability; nor is a contingent cancellation of debt income; nor does the compromise and settlement of a claim in dispute give rise to taxable income to the debtor.[2]

In the instant case, however, I hold that under the provisions of paragraph Sixth of the will in question the testator made no provision for the payment of estate taxes on any property in which prior to his death he may have had an interest save only that passing by his will.

Secondly, the tax on the property held by the entireties came within the purview of the Pennsylvania Apportionment Act and was so processed by the Orphans' Court of Montgomery County.

Thirdly, the taxpayer in return for an acquittance from the liability of a substantial estate tax claim applied her share of executors' commissions in the sum of $48,116.-12 as a quid pro quo.

Fourthly, the taxpayer was actually enriched at least to the extent of the amount of executors' commissions to which she was entitled and which she thus applied.

Therefore, by using the $48,116.12 in commissions to obtain a release from the estate of its claim against her, the taxpayer realized that amount, which is taxable under Section 22(a) of the Internal Revenue Code as her personal income.

1. Mertens, Law of Federal Income Taxation, Vol. 2, Page 78, Sec. 11.19.

2. Mertens, Law of Federal Income Taxation, Vol. 2, Page 80, Sec. 11.19.

.The taxpayer is not entitled to a refund of any part of the taxes or interest claimed by her in this action. The defendant is entitled to judgment against the taxpayer for its costs.