### CLARKE v. UNITED STATES.

#### No. 10419.

United States Court of Appeals Third Circuit.

Argued May 10, 1951.

Filed May 25, 1951.

John Wintersteen, Morse Garwood, Philadelphia, Pa. (MacCoy, Evans & Lewis, Philadelphia, Pa., on the brief), for appellant.

Morton K. Rothschild, Washington, D. C., (Theron Lamar Caudle, Asst. Atty. Gen., Ellis N. Slack, Lee A. Jackson, Special Assts. to the Atty. Gen., Gerald A. Gleeson, U. S. Atty., Thomas J. Curtin, Asst. U. S. Atty., Philadelphia, Pa., on the brief), for appellee.

Before MARIS, STALEY and HASTIE, Circuit Judges.

MARIS, Circuit Judge.

This is an appeal from a judgment entered against the plaintiff by the District Court for the Eastern District of Pennsylvania in a suit brought by her against the United States to recover income taxes which she alleges have been erroneously exacted.

The plaintiff was the widow of Edward S. Wagner and is coexecutor of his estate with the Provident Trust Company of Philadelphia. Wagner, who was a resident of Montgomery County, Pennsylvania, died August 15, 1939 leaving a very substantial estate. During the course of the administration of the estate certain differences arose between the executors and the plaintiff in her individual capacity and as beneficiary under her husband's will. One of these questions was whether an extraordinary dividend received from the Scott Paper Company, amounting to $37,491.60, should be treated as principal or income.

The other question arose under the Pennsylvania Apportionment Act of July 2, 1937, P.L. 2762, 20 P.S.Pa. § 844. It appears that the decedent and the plaintiff held as tenants by entireties certain real estate and bank accounts which passed to the plaintiff on the decedent's death but which were included in the decedent's gross estate for purposes of federal and Pennsylvania estate taxes. Under the Pennsylvania Apportionment Act the estate tax levied in respect of such jointly owned property is to be prorated and charged against the person to whom the property passes unless the decedent has provided otherwise by his will. By his will Wagner had made provision in this regard as follows: "SIXTH: I will and direct that all estate tax, inheritance tax, succession tax, transfer tax, or any other tax in the nature of any thereof which may be chargeable upon my estate or any portion thereof, or upon any bequest, trust, benefaction or any interest in my estate or any part thereof given or provided for by this my Will, shall be paid out of my general estate, so that all provisions or benefactions of every kind or nature given or made by this my Will shall be free and clear of all taxes as aforesaid." Thus the second dispute between the parties involved the proper interpretation to be put upon

this testamentary provision, the plaintiff contending that it should be construed as imposing upon the decedent's general estate the estate taxes attributable to the property held by entireties and the executors taking the position that those taxes should be charged to the plaintiff.

In order to terminate these controversies and to provide for the amicable settlement of the estate a formal agreement was entered into on May 26, 1941 between the Provident Trust Company and the plaintiff as executors and the plaintiff individually. The agreement recited that the questions to which we have referred had arisen, that the plaintiff was entitled to compensation for her services as coexecutor and claimed on that account the sum of $48,116.12, being 1% of the appraised value of the decedent's personal estate, and that she was willing to forego her claim for compensation as coexecutor and her claim to any share in the dividend from the Scott Paper Company as income if the executors would make no claim against her individually for prorated estate taxes under the Pennsylvania Apportionment Act.

The agreement accordingly provided on the one hand that the federal and Pennsylvania estate taxes applicable to the property held by entireties and amounting to approximately $84,000 should be borne by the estate and that no claim for reimbursement therefor should be made against the plaintiff and on the other hand that the plaintiff would make no claim for compensation as coexecutor nor any claim for a share in the extraordinary dividend from the Scott Paper Company as income. This agreement was approved by the Orphans' Court of Montgomery County on June 2, 1941 and two months later that court confirmed the executors' account and awarded executors' commissions at 3%, amounting to $144,348.36, which amount had previously been paid to the Provident Trust Company alone and which was retained by that company, the plaintiff making no claim thereto.

The plaintiff filed a federal income tax return for 1941 disclosing a tax liability of $25,480.14 which she paid. Subsequently the Commissioner of Internal Revenue determined a deficiency in her income tax for the year 1941 in the amount of $34,-317.01. This deficiency resulted from his inclusion in the plaintiff's gross income of $48,116.12, being one-third of the amount of $144,348.36 which had been awarded to the plaintiff and the Provident Trust Company as executors' commissions by the Orphans' Court of Montgomery County and to which the plaintiff pursuant to the agreement of May 26, 1941 had made no claim. Thereafter the plaintiff paid the amount of the deficiency and filed a claim for its refund which was denied. She then instituted the suit from which the present appeal was taken.

The Commissioner had assessed the additional income tax here in controversy against the plaintiff upon the theory that she had given up her claim to executors' commissions in the sum of $48,116.12 in consideration of the agreement with the executors to give up their claim against her amounting to approximately $84,000 for federal and Pennsylvania estate taxes to be prorated and charged to her under the Pennsylvania Apportionment Act. The plaintiff's contention in the court below and here is that under paragraph Sixth of the will, properly construed, the taxes in question were chargeable against her deceased husband's general estate and were not chargeable against her. Accordingly, she argued, she received no consideration for giving up her claim to the commissions and those commissions, therefore, did not constitute income to her in any true sense.

The district court considered the question whether paragraph Sixth of the decedent's will operated to charge the taxes in question upon his general estate and decided that, properly interpreted, it did not do so. The court concluded that the plaintiff in receiving under the agreement of May 26, 1941 the release of her obligation to reimburse the estate for the estate taxes in question had received the benefit of the share of executors' commissions which she had given up, amounting to $48,116.12, and had been actually enriched to that extent. The court accordingly entered the judg-

ment against the plaintiff and in favor of the defendant from which the present appeal was taken. D.C., 94 F.Supp. 543.

The judgment must be affirmed. It is perfectly clear that on May 26, 1941 when the plaintiff signed the agreement of settlement she gave up for a sufficient consideration commissions amounting to $48,116.12 to which she was admittedly entitled as coexecutor, being one-third of the amount subsequently awarded to the two executors by the Orphans' Court of Montgomery County. The amount of these commissions was, therefore, income to her under Section 22(a) of the Internal Revenue Code, 26 U.S.C.A. § 22(a), even though she did not actually receive the cash since she did receive what she formally agreed was an equivalent benefit. Compare Old Colony Tr. Co. v. Com'r Int. Rev., 1929, 279 U.S. 716, 49 S.Ct. 499, 73 L.Ed. 918; Douglas v. Willcuts, 1935, 296 U.S. 1, 56 S.Ct. 59, 80 L.Ed. 3; Helvering v. Clifford, 1940, 309 U.S. 331, 60 S.Ct. 554, 84 L.Ed. 788; Helvering v. Horst, 1940, 311 U.S. 112, 61 S.Ct. 144, 85 L.Ed. 75; Harrison v. Shaffner, 1941, 312 U.S. 579, 61 S.Ct. 759, 85 L.Ed. 1055.

In this court the plaintiff stressed her contention that the district court erred in its construction of paragraph Sixth of her husband's will. She sought to show that under the Pennsylvania decisions that paragraph should be construed as applicable to the estate taxes levied on the property held by entireties and that accordingly she had no actual liability under the Pennsylvania Apportionment Act the release of which could furnish consideration for the surrender by her of her claim to executor's commissions. We think that it is unnecessary for us to determine this question, however, since it is perfectly clear that the construction of paragraph Sixth of the testator's will at the time of the agreement involved a substantial question and certainly represented a claim which was disputed honestly and in good faith. There can be no question but that the giving up in good faith of a disputed claim is sufficient consideration for the payment or giving up of money on the part of the other party to the dispute.

Sutton v. Dudley, 1899, 193 Pa. 194, 205, 44 A. 438, 442; In re Miller's Estate, 1924, 279 Pa. 30, 39, 123 A. 646, 649; Scranton Gas & W. Co. v. Weston, 1914, 57 Pa.Super. 355, 360. This is true even though the claim is doubtful and may well be found to be without merit if it is litigated. O'Keson v. Barclay, 1831, 2 Pen. & W. 531; I. L. Lyons Co. v. Mahn, 1916, 62 Pa.Super. 478, 482.

Accordingly it must be held that the plaintiff here received sufficient consideration for her agreement to give up her claim for executors' commissions even though it be true, which we do not decide, that she could have defeated the executors' claim against her for estate taxes under the Pennsylvania Apportionment Act if she had chosen to litigate that controversy instead of settling it.

The judgment of the district court will be affirmed.